UNITED STATES of America, Plaintiff,

v.

Rogelio CAMPOS, Defendant.

Cv. No. 96–2142–TUV.
Cr. No. 92–20348–TU.

United States District Court,
W.D. Tennessee,
Western Division.

June 19, 1996.

Rogelio Campos, pro se.

## ORDER DENYING MOTION UNDER 28 U.S.C. § 2255

TURNER, District Judge.

Plaintiff, Rogelio Campos, an inmate at the Federal Prison Camp at El Paso, Texas, has filed a motion under 28 U.S.C. § 2255, attacking his federal drug trafficking and firearm convictions.

On December 17, 1992, a federal grand jury indicted Campos and a co-defendant for one count of possession of 91 pounds of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and one count of carrying and using a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). The indictment also charged the co-defendant with one count of possession of a firearm after conviction of a felony, in violation of 18 U.S.C. § 922(g). The court presided at a jury trial between August 2 and 4, 1993, at the conclusion of which the jury found Campos guilty on both counts. On December 10, 1993, the court conducted a sentencing hearing, and on December 21, 1993, the court entered a judgment of conviction, sentencing him to thirty-six months on the marijuana possession count and to sixty months on the firearm count, consecutive to the drug trafficking count, for a total sentence of ninety-six months, plus a three-year period of supervised release. On appeal, the Sixth Circuit affirmed Campos's convictions. *United States v. Campos*, No. 94–5143, 1995 WL 29454 (6th Cir. Jan. 25, 1995).

Defendant now claims that his section 924(c) conviction should be set aside under *Bailey v. United States*, —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). *Bailey* held. that to sustain a conviction under the "use" prong of section 924(c)(1), the United States must show that the defendant actively employed the firearm during and in relation to the predicate crime. This argument is without merit, however, because *Bailey* is not applicable to defendant's case.

Defendant argues that under *Bailey* he could not have been convicted of using the firearm. This contention is irrelevant. Campos was indicted under both prongs of section 924(c)(1). Section 924(c)(1) prohibits "carrying" a firearm during the commission of a drug trafficking offense, as well as active use.[1] *Bailey* addressed only. the issue of what constitutes "use" of a firearm in relation to a drug-trafficking offense. The court specifically held that the "carry" prong has a different content: "The 'carry' prong of § 924(c)(1), for example, brings some offenders who .would not satisfy the "use" prong within the reach of the statute." —— U.S. at ——, 116 S.Ct. at 509. The court not only did not purport to construe the "carrying" prong, but explicitly directed a remand for consideration of whether the defendant's conviction should be upheld under that prong: "Because the Court of Appeals did not consider liability under the 'carry' prong of § 924(c)(1) for Bailey or Robinson, we remand for consideration of that basis for upholding the convictions." *Id.* Campos was specifically indicted for "carrying" a firearm. He does not argue that he was not guilty of that separate offense. The interpretation of the "use" prong of section 924(c)(1) is irrelevant to his conviction, which is valid.

Furthermore, even if defendant did challenge his conviction under the carrying prong of section 924(c), his conviction passes muster.

The evidence at trial demonstrated that on August 9, 1992, Campos purchased an Ntratrc TEC (DC9) nine millimeter Luger semiautomatic assault pistol, serial number D00–4437, from a firearms dealer in Corpus Christi, Texas. (Trial Transcript, at 8–9, 122). On August 28, 1992, a 1992 Chevrolet Astro van was rented at an Enterprise Rent–A–Car location in Corpus Christi, Texas. *Id.* at 100–02. The rental agreement for the van listed Campos as an additional driver and limited the use of the van to the State of Texas. *Id.* at 102. Campos picked up his co-

---

1. Section 924(c)(1) states, in pertinent part:

   Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if·committed by the use of a dead-

   ly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years....

defendant at the co-defendant's apartment on August 28 and asked him to drive the van to Ohio. *Id.* at 198–99. On August 29, 1992, defendant was riding in the front passenger seat of the van, which was being driven by his co-defendant. *Id.* at 30–35, 40. A Shelby County, Tennessee sheriff's deputy stopped the van for exceeding the speed limit. *Id.* at 31. During the stop the officer developed a reasonable suspicion that the two men were transporting marijuana, used a drug-detection dog to identify the van as containing a controlled substance, searched the van and found the marijuana. *Id.* at 41–44. They discovered the pistol in a case with a clip containing 31 rounds of ammunition under the front passenger seat occupied by defendant Campos. *Id.* at 53–54. The case could be easily reached by a passenger sitting in that seat. *Id.* at 62, 70, 79–80. The weapon is a type that requires only a second to load the clip. *Id.* at 91. The officer found a beeper on Campos. *Id.* at 56. He also found about $850 on Campos. *Id.* at 61.

The Sixth Circuit has interpreted *Bailey* as requiring a revised understanding of the meaning of "carrying a firearm during and in relation to" a drug trafficking offense. The mere simultaneous possession of a firearm and illegal controlled substance, standing alone, will not constitute "carrying" nor establish the necessary relationship between that carrying and the drug trafficking offense. *United States v. Riascos–Suarez*, 73 F.3d 616, 623 (6th Cir.1996).

■ According to the Sixth Circuit, the carrying prong requires proof that the defendant "physically brought [the firearm] with him in the course of his drug trade,"[2] and that the firearm was "immediately available for use—on the defendant or within his or her reach."[3]

Both of these requirements are clearly met in this case. The United States proved that Campos purchased the firearm. The sheriff's deputy discovered it immediately available and within his reach, in a case under the seat of the van, with a loaded ammunition clip in the same case. The fact that the clip

was not inserted in the pistol when Campos was arrested does not detract from its immediate availability. The prosecution presented proof that the clip could be inserted "in a second." This evidence is more than sufficient for a jury to find that this defendant carried the firearm to the van to have it available while committing the crime of possessing marijuana with intent to distribute, and that he further transported it and placed it beneath the van seat where it was immediately available. These facts are sufficient to satisfy the carrying prong of the statute.

■ The evidence introduced at trial is also more than adequate to demonstrate the necessary relationship between the carrying of the firearm and defendant's drug-trafficking activities. *Riascos–Suarez's* understanding of the requirement of a relationship between the carrying and the crime tracks prior law. Citing the pre-*Bailey* decisions in *Smith v. United States*, 508 U.S. 223, 236–39, 113 S.Ct. 2050, 2058–59, 124 L.Ed.2d 138 (1993), and *United States v. Brown*, 915 F.2d 219, 226 (6th Cir.1990), the Sixth Circuit determined that "the Government must prove that the firearm furthered the purpose or effect of the crime and that its presence or involvement was not the result of coincidence." *Riascos–Suarez*, 73 F.3d at 623.

In analyzing whether a purpose of the crime was furthered, *Riascos–Suarez* cited approvingly to the holding of *United States v. Edwards*, 994 F.2d 417 (8th Cir.1993), *cert. denied*, 510 U.S. 1048, 114 S.Ct. 701, 126 L.Ed.2d 667 (1994), that despite a lack of evidence that the defendant actively sold drugs from his home or stored them there, the presence of large amounts of cash provided a relationship because "the protection of drug proceeds furthers a drug trafficking crime." *Riascos–Suarez*, 73 F.3d at 624. As the Sixth Circuit had previously held, the government must merely prove that

"the possessor of a weapon intended to have it available for possible use during or immediately following the transaction, or [that] it facilitated the transaction by lending courage to the possessor. The defen-

---

**2.** *United States v. Moore*, 76 F.3d 111, 113 (6th Cir.1996).

**3.** *Moore*, 76 F.3d at 113; *United States v. Riascos–Suarez*, 73 F.3d 616, 623 (6th Cir.1996).

dant's sole purpose in carrying the weapon need not have been facilitation of the drug trafficking crime."

*United States v. Blankenship*, 954 F.2d 1224, 1229 (6th Cir.1992) (quoting *Brown*, 915 F.2d at 226).

*Blankenship* and *Riascos–Suarez* both focused on finding a relationship between the carrying of a firearm and a discrete, single drug transaction. Proof of the proper relationship is even simpler when the crime to which the carrying must relate is ongoing possession with intent to distribute.

The rental agreement, evidence that Campos was the leader and planner of the trip, the money and beeper found on his person, and a quantity of marijuana so substantial as to be obviously intended for resale provide ample evidence that this defendant was, when arrested, in possession of significant quantities of an illegal controlled substance with the intent to sell and/or distribute that substance. The defendant had bought the pistol immediately prior to the trip, a fact that tends to prove that he needed it while transporting the marijuana. The defendant clearly carried this weapon to protect or embolden himself while possessing marijuana with intent to distribute, and while possessing the money he was to accumulate as the profits of his drug trafficking. Thus there is ample evidence that the firearm clearly furthered the purposes of his crime of possessing marijuana with intent to distribute, and its presence was obviously not the result of coincidence.

Since *Bailey* was decided, two decisions of the Sixth Circuit Court of Appeals have vacated section 924(c) convictions and remanded for clarification of whether the defendant violated the use or carrying prongs of the statute. *See United States v. Bingham*, 81 F.3d 617 (6th Cir.1996); *United States v. Moore*, 76 F.3d 111, 113 (6th Cir.1996). A simplistic reading of those cases and *Bailey* might lead to the conclusion that the only way to violate section 924(c) is to carry the weapon on the person while actually distributing or selling illegal controlled substances, or while travelling to the scene of such a transaction. Such a reading, however, would do violence to the express terms of section

924(c). "For purposes of this subsection, the term 'drug trafficking crime' means *any* felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)...." 18 U.S.C. § 924(c)(2) (emphasis added). "Any felony" clearly encompasses possession with intent to distribute, not merely the discrete acts of manufacturing, distributing, or selling. A drug trafficker may violated section 924(c) by possessing a firearm in relation to the crime of possession, not just selling or distributing. As with pre–*Bailey* analysis, a drug trafficker who obtains a firearm, brings it to a van and keeps it immediately available in the van while in possession of illegal controlled substances violates the statute, assuming the government can produce sufficient evidence of this intent. Campos was indicted and convicted for possession of marijuana and for carrying the pistol in relation to that possession. The relationship between the carrying of the firearm and the possession charge does not require that the drug trafficker be arrested in the act of carrying the weapon while engaging in the discrete transaction.

■ A motion under section 2255 must consist of something more than legal conclusions unsupported by factual allegations. *Short v. United States*, 504 F.2d 63 (6th Cir.1974); *Ramsey v. United States*, 223 F.Supp. 605 (E.D.Tenn.1963). Furthermore, in order to obtain relief under § 2255 on the basis of a constitutional error, the record must reflect an error of constitutional magnitude that had a substantial and injurious effect or influence on the proceedings. *See Brecht v. Abrahamson*, 507 U.S. 619, 637–39, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993); *United States v. Ross*, 40 F.3d 144, 146 (7th Cir.1994). A motion under section 2255 must establish "a 'fundamental defect [in the proceedings] which inherently results in a complete miscarriage of justice,' or an error so egregious that it amounts to a violation of due process." *See United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir.1990) (per curiam) (citation omitted). Campos's motion does not approach or cross this threshold.

■ The motion, together with the files and record in this case "conclusively show

that the prisoner is entitled to no relief." 28 U.S.C. § 2255. *See also* Rule 4(b), Rules Governing Section 2255 Proceedings in the United States District Courts. Therefore the Court finds that a response is not required from the United States Attorney, and that the motion may be resolved without an evidentiary hearing. *United States v. Johnson,* 327 U.S. 106, 111, 66 S.Ct. 464, 466, 90 L.Ed. 562 (1946); *Baker v. United States,* 781 F.2d 85, 92 (6th Cir.), *cert. denied,* 479 U.S. 1017, 107 S.Ct. 667, 93 L.Ed.2d 719 (1986). The conviction and sentence are valid, and this motion is DENIED.

■ Recent amendments to section 2255 have changed the procedure for evaluating the appealability of a district court's decision denying a section 2255 motion.[4] Section 2255 now incorporates the old habeas procedure of issuing or denying a certificate of probable cause, now renamed a certificate of appealability. No section 2255 movant may appeal without this certificate.

Although the name has been changed, the statutory standard for issuing the new certificate is phrased in exactly the language previously used to determine whether to issue a certificate of probable cause. 28 U.S.C. § 2253(c)(1)(B) now covers certificates of appealability in section 2255 motions. That new section provides:

> Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from ... the final order in a proceeding under section 2255.

Section 2253(c)(2) provides: "A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right." This statutory language simply incorporates the language of the leading Supreme Court case, enunciating the standard for determining whether to issue a certificate of probable cause.

> [P]robable cause requires something more than the absence of frivolity [and] the stan-

dard [for issuance of a certificate of probable cause] is a higher one than the "good faith" requirement of § 1915. [A] certificate of probable cause requires petitioner to make a substantial showing of the denial of [a] federal right. [A] "question of some substance," or a "substantial showing of the denial of [a] federal right," obviously [does not require] the petitioner [to] show that he should prevail on the merits. He has already failed in that endeavor. Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues in a different manner; or that the questions are "adequate to deserve encouragement to proceed further."

*Barefoot v. Estelle,* 463 U.S. 880, 893 and n. 4, 103 S.Ct. 3383, 3394–95 and n. 4, 77 L.Ed.2d 1090 (1983) (internal quotations and citations omitted).

It is not entirely clear from the legislation whether Congress intends only the federal appellate courts to address the appealability of a section 2255 motion. The amendment to section 2253 refers to "a circuit justice or judge" while the accompanying amendment to Rule 22 of the Federal Rules of Appellate Procedure refers to action by the district court.

In this case, the movant's claim is clearly devoid of merit. He cannot establish the existence of a question of some substance, or of the substantial denial of a federal right. As no reasonable jurist could disagree with these conclusions, to the extent that a district court has the authority to rule on the issuance of a certificate of appealability under amended 28 U.S.C. § 2253, that certificate is DENIED.

IT IS SO ORDERED.

---

4. On April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996, P.L. 104–518 was signed into law. Title I of this Act substantially revised the habeas statutes, including 28 U.S.C. §§ 2244, 2253, and 2255. Among other provisions, this Act amends 28 U.S.C. §§ 2244(b) and 2255 to require the district court to dismiss any subsequent section 2255 motion case absent permission from the court of appeals.