**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 27 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENH CIRCUIT

---

WILLIAM C. HOUCHIN, JR.,

Petitioner-Appellant,

v.                                          No. 96-1187

ARISTEDES W. ZAVARAS, Director,
Colorado Department of Corrections,

Respondent-Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. CIV-93-K-2651)

---

Submitted on the briefs:

Jean E. Dubofsky of Jean E. Dubofsky, P.C., Boulder, Colorado, for
Petitioner-Appellant.

Gale A. Norton, Attorney General, and Wendy J. Ritz, Assistant Attorney
General, Denver, Colorado, for Respondent-Appellee.

---

Before PORFILIO, BALDOCK, and HENRY, Circuit Judges.

---

HENRY, Circuit Judge.

---

Petitioner William C. Houchin, Jr. appeals from an order of the district court denying his petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254. See Houchin v. Zavaras, 919 F. Supp. 1480 (D. Colo. 1996) (Houchin I). We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.[1]

## I.  Facts

In March 1984, Mr. Houchin was convicted of two counts of first-degree murder for killing his father- and mother-in-law, Mr. and Mrs. Naureth.  He was sentenced to two consecutive life sentences without parole.

Mr. Houchin had been living in the basement apartment in the Naureths' home, located in Pueblo, Colorado, with his wife Linda, the Naureth's daughter. On the night before the murders, Linda informed Mr. Houchin that she wanted a divorce.  Mr. Houchin left the Naureth home, but returned the next day when Linda and her mother were out.  Mr. Naureth was working on his truck in the garage.  Mr. Houchin went to the garage with his gun, where he apparently struggled with Mr. Naureth.  Mr. Naureth was shot twice and Mr. Houchin was shot once in the arm.  Mr. Houchin then went to the basement apartment, changed

---

[1]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument.  See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1.9.  The case is therefore ordered submitted without oral argument.

his shirt and bound his wound, picked up a rifle, returned to the garage, and again shot Mr. Naureth, this time in the head at close range.

Mr. Houchin then destroyed furnishings in the house and killed the family dog. When Linda and Mrs. Naureth returned home, Mr. Houchin was still in the house with a revolver and a rifle. Mrs. Naureth attempted to flee through the garage, as Linda attempted to restrain Mr. Houchin. Mr. Houchin shoved Linda against the wall and she ran out of the house and across the street for help. Mr. Houchin returned to the garage and fired two shots from his single-action revolver, one of which hit Mrs. Naureth. She died later at the hospital.

Mr. Houchin then left. The next morning, Mr. Houchin was found asleep on the seat of his pickup truck in LaVeta, Colorado, near his parents' home. He was bleeding from a gunshot wound to his left arm and one of the arresting officers noticed the odor of alcohol on his breath. He appeared unconscious while being transported to the hospital and, initially, at the hospital. He regained consciousness in a manner which caused the treating physician's assistant to state that he was unable to rule out malingering as a cause for Mr. Houchin's comatose state. Tests performed at the hospital that morning showed that Mr. Houchin had a blood alcohol level of .232 and a urine alcohol level of .359.

## II. Procedural Background

The public defender's office initially represented Mr. Houchin. Later, Mr. Houchin's father retained as private counsel Thomas H. Heaton, a Massachusetts attorney whom the father had met in the course of a real estate transaction. Mr. Heaton secured local co-counsel, Terry Perlet.

Following his conviction, Mr. Houchin appealed. The Colorado Court of Appeals granted a limited remand to permit the district court to consider, under Colo. R. Crim. P. 35(c), Mr. Houchin's claim that he had received ineffective assistance of counsel in violation of the United States and Colorado Constitutions. The trial court determined that both counsel were ineffective in some respects but that their overall performance did not amount to constitutionally ineffective assistance. The Colorado Court of Appeals affirmed but determined that counsels' overall performance was below the level of reasonably competent assistance to which Mr. Houchin was constitutionally entitled. However, the court held that the outcome of the trial would not have differed had counsels' performance been competent. The Colorado Supreme Court denied certiorari.

Mr. Houchin thereafter filed this petition seeking habeas relief in federal district court. The district court determined that while Mr. Houchin had received representation which fell below an objective standard of reasonableness, he had failed to show a reasonable probability that, but for counsels' errors, his

convictions would have differed.  See Houchin I, 919 F. Supp. at 1496.  The court

thus denied habeas relief and Mr. Houchin filed this appeal.


III.  Certificate of Appealability

On April 26, 1996, Mr. Houchin filed a notice of appeal and requested a

certificate of probable cause in the district court.  The district court granted him a

certificate of appealability.  See Houchin v. Zavaras, 924 F. Supp. 115 (D. Colo.

1996) (Houchin II).  We initially address whether the district court has the power

vested in it by Congress to grant certificates of appealability.

On April 24, 1996, the President signed the Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214.  The

AEDPA eliminated the requirement that petitioners seeking review of state habeas

petitions obtain a certificate of probable cause from either the district court judge

who ruled on his petition or from a circuit judge in order to appeal.  See

28 U.S.C. § 2253 (1995).  The AEDPA substituted the requirement that

petitioners seeking review of district court judgments in petitions filed pursuant

to either 28 U.S.C. § 2254 or 28 U.S.C. § 2255 seek a certificate of appealability

with its attendant standards prior to appealing.

The AEDPA contains conflicting statements regarding whether a petitioner

may seek a certificate of appealability from the district court.  The AEDPA, at

28 U.S.C. § 2253(c), provides that:

> (1)  Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from--
>
>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>>
>> (B) the final order in a proceeding under section 2255.
>
> (2)  A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3)  The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

The AEDPA also amended Fed. R. App. P. 22(b) so that it now states:

> **Certificate of appealability.**--In a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court, an appeal by the applicant for the writ may not proceed unless a district or a circuit judge issues a certificate of appealability pursuant to section 2253(c) . . . .  If an appeal is taken by the applicant, the district judge who rendered the judgment shall either issue a certificate of appealability or state the reasons why such a certificate should not issue.  The certificate or the statement shall be forwarded to the court of appeals with the notice of appeal and the file of the proceedings in the district court.  If the district judge has denied the certificate, the applicant for the  writ may then request issuance of the certificate by a circuit judge. . . .  If no express request for a certificate is filed, the notice of appeal shall be deemed to constitute a request addressed to the judges of the court of appeals.

If an appeal is taken by a State or its representative, a certificate of appealability is not required.

The internal inconsistencies between amended § 2253 and Rule 22 are readily apparent. The district court determined that it had authority to issue the certificate of appealability based on Rule 22. Houchin II, 924 F. Supp. at 117. The court noted that § 2253 did not state that "only" circuit justices and judges were authorized to issue the certificate, thus not expressly "prohibit[ing] district judges from exercising the authority vested in us by the Rule of Appellate Procedure." Id. We agree.

"In determining the scope of a statute, we look first to its language." United States v. Silvers, 84 F.3d 1317, 1321 (10th Cir. 1996) (quotation omitted), cert. denied, 117 S. Ct. 742 (1997). Section 2253(c)(1) states that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . ." If the adjective "circuit" modifies both "justice" and "judge," then a district court judge may not issue a certificate of appealability. However, Rule 22(b) provides that "a district or a circuit judge" may issue the certificate of appealability in a § 2254 proceeding.

In reconciling this apparent conflict between the statute and the rule, we bear in mind that when construing a statute, the text of each provision should be read so as to give effect to all of the statute's provisions. See Homeland Stores, Inc. v. Resolution Trust Corp., 17 F.3d 1269, 1273 (10th Cir. 1994). If we were

to determine that the adjective "circuit" necessarily modifies both "justice" and "judge," the effect would be to deny the district court judge the authority to issue a certificate of appealability, thus nullifying the language of the amended Rule 22(b). This we may not do.

A review of the history of proposals to amend the provisions for issuance of a certificate permitting appeals from collateral review shows that efforts to deny district judges the ability to issue such certificates have consistently failed. See Hunter v. United States, 101 F.3d 1565, 1577-83 (11th Cir. 1996) (examining efforts by Congress to amend the procedure for obtaining certificates for appeal in light of Judge Henry J. Friendly's article *Is Innocence Irrelevant?: Collateral Attack on Criminal Judgments*, 38 U. Chi. L.Rev. 142 (1970)).

Because Congress has historically "chose[n] to leave district judges with the authority to issue such certificates," id. at 1577, we hold that, absent express rejection, Congress likewise intended in the AEDPA that district court judges would have the authority to issue certificates of appealability. See Emergency General Order, 1996 U.S. 96-41, at 2 (10th Cir. Oct. 1, 1996).

We emphasize that our holding extends only to the authority district court judges retain to issue certificates of appealability in § 2254 appeals under the provisions of the AEDPA. We decline, at this time, to address whether district court judges may also issue certificates of appealability in appeals arising under

-8-

§ 2255.  Compare Hunter, 101 F.3d at 1575, n.8 (concluding that district judges may issue certificates of appealability in § 2255 appeals because to hold otherwise would negate the "basic rule of statutory construction that identical words [even when] used in different parts of the same act are intended to have the same meaning." (quotation omitted)); with United States v. Cota-Loaiza, 936 F. Supp. 756, 759-61 (D. Colo. 1996) (holding that because Rule 22(b) expressly limits its applicability to proceedings arising out of processes issued by a state court, district judges may not issue certificates of appealability in appeals taken from denials of § 2255 petitions); with United States v. Campos, 932 F. Supp. 1034, 1038 (W.D. Tenn. 1996) (denying a certificate of appealability in appeal taken from a § 2255 petition "to the extent that a district court has the authority to rule on the issuance of a certificate of appealability under amended 28 U.S.C. § 2253").

As the district court has properly issued a certificate of appealability, we now address the merits of this appeal.[2]

## IV.  Standard of Review

In reviewing the denial of a petitioner's habeas petition,[3] we accept the district court's factual findings unless they are clearly erroneous and we review the court's legal conclusions de novo.  Hill v. Reynolds, 942 F.2d 1494, 1495 (10th Cir. 1991).  "We review an ineffectiveness [of counsel] claim de novo, as it presents a mixed question of law and fact."  Davis v. Executive Dir. of Dep't of Corrections 100 F.3d 750, 759 (10th Cir. 1996).  Because there is a strong presumption that counsel acted reasonably and represented his client effectively, we review counsel's performance with substantial deference.  Id.

---

[2]    The district court declined to specify which issue raised by Mr. Houchin satisfied the requirement for issuing a certificate of appealability. However, Mr. Houchin raised only one issue on appeal and, as the court noted, the opinion denying the petition exceeded thirty-nine pages, thus indicating Mr. Houchin had "made a substantial showing of the denial of a constitutional right."  Section 2253(c)(2).  The court adequately complied with the requirements of § 2253(c)(3).

[3]    We need not determine whether § 2244(d) as amended by the AEDPA to require that a petitioner file his federal collateral action within one year of the final determination of the criminal action in state court applies to this case.  Mr. Houchin's petition was filed within this one-year period.  Cf. United States v. Lopez, 100 F.3d 113, 117 (10th Cir. 1996) (holding that one-year requirement is not retroactive in appeals brought pursuant to § 2255).

The AEDPA amended the standards for reviewing state court judgments in § 2254 proceedings. Section 2254(e), like the prior § 2254(d), provides that a state court's determination of a factual issue "shall be presumed to be correct." The amended § 2254(e), goes further, however, and states that the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." In addition, § 2254(d) now sets forth the deference to be afforded the state's legal determinations:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Thus the AEDPA increases the deference to be paid by the federal courts to the state court's factual findings and legal determinations. While courts normally apply the law in force at the time of their decision, they will not use the new law if its application would have a retroactive effect. See Landgraf v. USI Film Prods., 511 U.S. 244, 264 (1994). The Supreme Court has recently accepted certiorari on this issue. See Lindh v. Murphy, 117 S. Ct. 726 (1997) (accepting

-11-

certiorari on the question of whether § 107(c) of AEDPA fails to specify the extent to which § 2254(d) is to apply retroactively to pending habeas petitions, and, if so, whether the court correctly determined that the "habeas-curtailing statutes apply retroactively?" 65 U.S.L.W. 3483 (Jan. 14, 1997)). We need not await the Supreme Court's decision on these issues as Mr. Houchin cannot prevail under either version of the statute.

## V. Ineffective Assistance of Counsel

The Sixth Amendment provides that an accused has the right to assistance of counsel in all criminal prosecutions. U.S. Const. amend. VI. Courts have recognized that this right to assistance of counsel includes the right to effective assistance of counsel. See Strickland v. Washington, 466 U.S. 668, 686 (1984). The right to effective counsel exists "in order to protect the fundamental right to a fair trial." Id. at 864; see also Nix v. Whiteside, 475 U.S. 157, 175 (1986) (benchmark of the right to counsel is the fairness of the adversarial proceeding); United States v. Cronic, 466 U.S. 648, 653 (1984) (the right to trial would be of little avail without counsel).

In examining the conduct of counsel, we "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690. "Absent some effect of

challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated." Cronic, 466 U.S. at 658.

Mr. Houchin contends that, had counsel provided competent assistance, he would not have been convicted of first degree murder, but would, instead, have been convicted of second degree murder, with its attendant shorter prison term and parole considerations. Mr. Houchin challenges the adequacy of trial counsel, Mr. Heaton and Mr. Perlet, in two respects. He contends counsel failed to subject the prosecution's case to meaningful adversarial testing and, therefore, prejudice should be presumed under the standards announced in Cronic. He also contends that he showed actual prejudice under the standards set forth in Strickland.

A. Cronic Analysis:

In Cronic, the Supreme Court held that circumstances can be present which

are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.

Most obvious, of course, is the complete denial of counsel. The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial. Similarly, if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable.

466 U.S. at 658-59 (footnotes omitted).

-13-

Mr. Houchin contends counsel failed to subject the prosecution's case to meaningful adversarial testing because Mr. Perlet failed to clearly articulate Mr. Houchin's defenses in his opening statement, failed to proffer jury instructions to support the defense theories, and should have spent more time with Mr. Houchin preparing him for trial. He also asserts Mr. Heaton's apparent intoxication and improper conduct at trial support a finding of presumed prejudice.

The record contains no evidence that Mr. Perlet conveyed to the jury that he believed Mr. Houchin was guilty or that he, in any other way, abandoned his duty of loyalty to Mr. Houchin and aligned himself with the prosecution in its efforts to obtain a conviction. Compare Davis, 100 F.3d at 759 (counsel's description of the case as "one of the worst ones I have ever seen" and expression of his hatred for defendant and the crimes did not constitute abandonment of his client under the circumstances); with Osborn v. Shillinger, 861 F.2d 612, 629 (10th Cir.1988) (where defense counsel effectively joined the state to obtain a death sentence, court concluded that prejudice was "established under any applicable standard").

Upon examination of the entire record in light of the standard announced in Cronic for presumed prejudice, we agree with the district court that, despite the errors of counsel, the adversarial testing envisioned by the Sixth Amendment occurred. Prejudice cannot be presumed in this case.

-14-

B.  Strickland Analysis

To establish a claim of ineffective assistance of counsel under Strickland, a defendant must first show that counsel committed serious errors in light of prevailing professional norms so that the "representation fell below an objective standard of reasonableness."  466 U.S. at 688.  Second, the petitioner must establish that he was prejudiced by counsel's representation.  Id. at 687.  We refrain from using hindsight to second-guess counsel's tactical decisions.  Id. at 689.

In his petition, Mr. Houchin alleged defense counsel essentially abandoned his only viable defense, i.e., that he lacked the requisite specific intent for first degree murder.  He asserted counsel (1) failed to investigate forensic evidence which could have revealed his lack of intent to commit murder when he shot Mr. and Mrs. Naureth, (2) failed to interview witnesses who could testify about Mr. Houchin's later conversations concerning his lack of intent to murder the Naureths; (3) failed to inform the jury during opening statements and closing arguments of his lack of intent to commit murder; and (4) failed to submit jury instructions concerning his lack of mens rea.  He also alleged Mr. Heaton's performance met the first prong of Strickland because he cross-examined one witness while he was not sober.  He further alleged Mr. Perlet violated his

constitutional right to effective counsel because he failed to meet with

Mr. Houchin sufficiently before trial to prepare him for testifying.

We agree with the district court that Mr. Houchin's counsel did provide

inadequate representation, which clearly meets the first prong of Strickland based

on "[Mr.] Perlet's failure to present a theory of defense to the jury, to submit a

jury instruction concerning mens rea, and to visit [Mr.] Houchin during the course

of the trial and [Mr.] Heaton's lack of sobriety and cross-examination of witness

Ron Miller at trial." Houchin I, 919 F. Supp. at 1496. We, therefore, address the

second, prejudice prong of Strickland.

To establish prejudice, a petitioner must show "a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would

have been different. A reasonable probability is a probability sufficient to

undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Examination of the record reveals overwhelming evidence of

Mr. Houchin's intent to kill the Naureths. Nothing can negate the fact that after

Mr. Naureth was shot, Mr. Houchin went back into the house, down into the

basement where he changed his shirt and bound his wound, got his rifle, went

upstairs where he may have had a drink, and then returned to the garage where he

shot Mr. Naureth in the head at close range. Review of the Rule 35 hearing

shows that no additional evidence was or could have been presented which would

have raised a reasonable doubt that Mr. Houchin was too drunk at that time to know what he was doing.

Likewise, Mr. Houchin shot Mrs. Naureth twice with a single-action revolver which meant that he had to pull the hammer back each time he pulled the trigger in order to fire the gun. Witnesses who testified at the Rule 35 hearing indicated there was no definite sign that Mr. Houchin was drunk the night of the shootings and that attempts to extrapolate back to his blood alcohol level from the level found the next morning were too speculative. Expert witnesses at the Rule 35 hearing concluded that the third shot to Mr. Naureth was the fatal one because Mr. Naureth wrote "I love fam" in the dust on the garage floor and because of the amount of blood from the head wound, both of which indicated he was alive when shot in the head, a shot which would have been instantly fatal.

The evidence of intent was overwhelming. Even had counsels' performances not been below the objective standard of reasonableness, no reasonable probability exists that the outcome of Mr. Houchin's trial would have been different. In the absence of prejudice, we do not find reversible error.

The judgment of the United States District Court for the District of Colorado is AFFIRMED.