**F I L E D**

**PUBLISH**

**JAN 10 2000**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

FLOYD ALLEN MEDLOCK,

      Petitioner - Appellant,

v.

RON WARD; DREW EDMONDSON,
Attorney General of the State of
Oklahoma,

      Respondents - Appellees.

No. 99-6089

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 96-CV-2035-C)**

---

Scott W. Braden, Assistant Federal Public Defender, Oklahoma City, Oklahoma,
for Petitioner-Appellant.

Jennifer B. Miller, Assistant Attorney General (W.A. Drew Edmondson, Attorney
General of Oklahoma with her on the brief), Oklahoma City, Oklahoma, for
Respondents-Appellees.

---

Before **KELLY**, **BRISCOE** and **LUCERO**, Circuit Judges.

---

**PER CURIAM.**

---

     Floyd Allen Medlock, a prisoner challenging a death sentence in Oklahoma,

sought habeas review in federal district court of his state conviction and sentence,

pursuant to 28 U.S.C. § 2254.  Medlock brings numerous claims before us after the denial of his petition and the issuance of a certificate of appealability by the district court.  His claims are duplicative, and we reduce them to three: the district court erred in concluding the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to Medlock's habeas petition; the district court should have granted habeas relief based on the state trial court's unconstitutional use of aggravating and mitigating circumstances; and the district court should have found Medlock was denied effective assistance of counsel in violation of the Sixth Amendment.  We exercise appellate jurisdiction pursuant to 28 U.S.C. §§ 1291 & 2253 and conclude that, because AEDPA applies and Medlock fails to meet its threshold for granting a writ of habeas corpus, and because his ineffective assistance of counsel claim is procedurally barred, the district court was correct in its denial of his petition.  See 28 U.S.C. § 2254(d).

I

The district court adopted, as do we, the following undisputed facts from the decision of the Oklahoma Court of Criminal Appeals, Medlock v. State, 887 P.2d 1333, 1337-38 (Okla. Crim. App. 1994).  On the afternoon of February 19, 1990, Medlock was in his apartment watching cartoons on television when he heard someone attempting to open his door.  See id. at 1337.  On opening the

door, he found Katherine Ann Busch, a small girl with a bicycle, who walked into his apartment and told him she once lived there. See id. When Medlock admonished her against barging into his home, Kathy said simply that she was hungry and wanted something to eat. See id. Medlock gave her potato chips and began to prepare macaroni and cheese. See id. While cooking, he told the police, "this real weird feeling" came over him. Id. at 1338.

Precisely what Medlock did next is unclear, see id., but the following is undisputed. Medlock grabbed Kathy by the arm, she jerked away, he grabbed her again, and she jerked away again. See id. He wrestled with her and covered her mouth when she began to scream, choking her until she passed out. See id. According to his confession, she regained consciousness, and he dragged her to the bathroom and forced her head into the toilet bowl for approximately ten minutes, during which time she was gasping for breath. See id. Then, while she was still alive, he stabbed her in the back of the neck with a steak knife and later with a hunting knife until she died, holding her head in the toilet bowl again so that she would not bleed on the floor. See id. After the bleeding ceased, he placed her in the bathtub, removed her clothes, and attempted to sexually molest her lifeless body.[1] See id. Finally, he wrapped her body in a blanket, placed it in

---

[1] Although we have indicated we are relating undisputed facts, there was dispute in the evidence regarding whether the victim was in fact dead when Medlock attempted to molest her.

a box, and deposited the box and her bicycle into a dumpster behind a nearby shopping center. See id.

The police found Kathy's body in the dumpster early the next morning. See id. at 1337. Later that day, Medlock called the police to confess to the murder before he was a suspect. See id. He explained that he feared harming others in the future. See id. at 1349. He told the police that the incident seemed dream-like and that he had trouble remembering it. See id. at 1338. When asked what caused him to do what he did, he answered that he had been hearing voices in his head since the age of twelve. See id.

In February 1990, Medlock was charged with the first-degree malice murder of Kathy Busch in Oklahoma state district court, to which he entered a plea of not guilty by reason of insanity. Accompanying the indictment, the State filed a Special Bill of Particulars alleging two aggravating circumstances: the murder was "especially heinous, atrocious, or cruel," and there was a probability that Medlock would commit criminal acts of violence such that he would remain a "continuing threat to society." Okla. Stat. tit. 21, § 701.12.

The case was set for jury trial, but before the jury was empaneled, Medlock entered a "blind" plea of guilty, not having reached an agreement with the State on the punishment it would recommend. Following a hearing, the court accepted the plea. See Medlock v. State, 887 P.2d at 1338-39.

-4-

At the subsequent sentencing hearing, Medlock presented mitigation evidence, including that of expert witnesses—a licensed clinical social worker, a professor of psychology at Oklahoma City University, and a retired clinical psychologist specializing in multiple personality disorder ("MPD"). See id. at 1340. Those experts testified that Medlock suffered from MPD with atypical features, explaining that his second personality was a violent twelve-year-old named "Charley" who had been in control of Medlock at the time of the murder. See id. at 1340-41. Appellant's experts added that MPD is treatable and Medlock's prognosis was good if he received therapy. See id. In rebuttal the State called its own expert witness, a clinical psychologist, who raised the possibility that Medlock was malingering and questioned his credibility. See id. The State's psychologist also opined that Medlock demonstrated a pattern of increasingly anti-social behavior. See id.

After the close of the sentencing hearing, but before the court entered its sentence, Medlock filed a motion to withdraw his plea. The court denied the motion and, upon finding that the aggravating circumstances outweighed the mitigating circumstances, imposed the death penalty. See id. at 1341-45. On direct appeal the Oklahoma Court of Criminal Appeals affirmed Medlock's conviction and sentence. See Medlock v. State, 887 P.2d 1333, reh'g denied, 889 P.2d 344 (Okla. Crim. App. 1995), cert. denied sub nom. Medlock v. Oklahoma,

516 U.S. 918 (1995). In September of 1996 Medlock filed an application for state post-conviction relief, which the Oklahoma Court of Criminal Appeals denied as well. See Medlock v. State, 927 P.2d 1069 (Okla. Crim. App. 1996), overruled on other grounds by Walker v. State, 933 P.2d 327, 334 n.6 (Okla. Crim. App. 1997).

The following June, Medlock filed a timely petition for a writ of habeas corpus in United States District Court for the Western District of Oklahoma, the denial of which, as noted, is the subject of this appeal.

## II

As a threshold matter, our Circuit has already settled the question of AEDPA's applicability to this case. We have stated that "AEDPA applies to [a petitioner's] case because he filed his § 2254 petition after April 24, 1996, the effective date of the Act." Braun v. Ward, 190 F.3d 1181, 1184 (10th Cir. 1999) (citing Hooks v. Ward, 184 F.3d 1206, 1213 (10th Cir. 1999)). AEDPA thus applies to Medlock's June 1997 petition.

Because the Oklahoma state courts have addressed on its merits Medlock's claim of unconstitutional use of aggravating and mitigating circumstances, we review the state courts' rulings under the AEDPA standard enunciated in 28 U.S.C. § 2254. Under that section, a federal court is precluded from granting

-6-

habeas relief on any claim adjudicated on the merits by the state court, unless the state proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). All factual findings of the state court are presumed correct unless the petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III

We examine first Medlock's various challenges to the use of aggravating and mitigating circumstances by the Oklahoma trial court and Court of Criminal Appeals and afterwards his claim of ineffective assistance of trial counsel.

### A

With regard to the facial constitutionality of the aggravators used by the trial court, Medlock's challenges to Oklahoma's "heinous, atrocious, or cruel" and "continuing threat" aggravators are meritless. To be acceptable under the Eighth Amendment, the aggravating circumstance must furnish a sentencer with a principled means of guiding its discretion. See Maynard v. Cartwright, 486 U.S. 356, 361-64 (1988). Our Circuit has repeatedly upheld the facial constitutionality

of these aggravators as "narrowed" by the State of Oklahoma, and we are bound by that body of precedent. See, e.g., Nguyen v. Reynolds, 131 F.3d 1340, 1352-54 (10th Cir. 1997); Hatch v. State, 58 F.3d 1447, 1468-69 (10th Cir. 1995).

**B**

With respect to the evidence used to prove the aggravators, Medlock contends that the Oklahoma court unconstitutionally relied on duplicative and cumulative sentencing factors. We disagree. "[D]ouble counting of aggravating factors, especially under a weighing scheme, has a tendency to skew the weighing process and creates the risk that the death sentence will be imposed arbitrarily and thus, unconstitutionally." United States v. McCullah, 76 F.3d 1087, 1111 (10th Cir. 1996).[2]

Contrary to Medlock's contention, these aggravating circumstances are not duplicative. In Cooks v. Ward, 165 F.3d 1283, 1289 (10th Cir. 1998) (quoting McCullah, 76 F.3d at 1087, 1111-12), cert. denied, 1999 WL 319436 (U.S. Oct. 4, 1999) (No. 98-9420), we explained that, to overlap impermissibly, one aggravating circumstance must "'necessarily subsume'" another. It is not impermissible for "certain evidence [to be] relevant to both aggravators." Id. Thus, Medlock is incorrect that use of evidence of his criminal record to find both

_____

[2] As previously stated, the AEDPA requires our application of Supreme Court precedent in determining whether the state court proceeding violated clearly established federal law. See 28 U.S.C. § 2254(d)(1). We assume then, for purposes of argument only, that Medlock can rely upon a circuit court case such as McCullah.

the "continuing threat to society" and "heinous, atrocious, or cruel" aggravating circumstances renders those aggravators duplicative. Cf. McCullah, 76 F.3d at 1111-12. The aggravators do not "necessarily subsume" one another under McCullah: The "continuing threat" aggravator goes to Medlock's future dangerousness, while the "heinous, atrocious, or cruel" aggravator goes to the nature of Medlock's crime. The former involves future conduct; the latter involves the nature of the act for which Medlock was convicted. Under these circumstances the elements of one aggravator do not necessarily subsume those of the other.

## C

As support for the aggravating circumstance of "continuing threat to society," the Oklahoma district court relied on Medlock's statement to the police that he feared hurting someone in the future. Medlock argues that the court's reliance on this potentially mitigating evidence rendered the aggravating circumstance unconstitutional by violating the requirement "that the sentencer in capital cases must be permitted to consider any relevant mitigating factor." Eddings v. Oklahoma, 455 U.S. 104, 112 (1982). On direct appeal, the Oklahoma Court of Criminal Appeals held that "Medlock's statement that he feared he would hurt someone in the future should not have been relied upon to find continuing threat." Medlock v. State, 887 P.2d at 1349. Rather, it held the

statement "demonstrates Medlock's willingness and ability to remove himself from society to minimize his threat to society" and thereby was not permissible support for the aggravator. Id. The court nonetheless sustained the finding of the aggravator based on evidence of the callousness of Medlock's crime and his prior convictions for arson and burglary. See id.

It is well established that "the fundamental respect for humanity underlying the Eighth Amendment . . . requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death." Eddings, 455 U.S. at 112 (quoting Woodson v. North Carolina, 428 U.S. 280, 304 (1976)) (internal quotations omitted); see Lockett v. Ohio, 438 U.S. 586 (1973). The Lockett principle prohibits a state from excluding from the sentencer's consideration, and prohibits the sentencer itself from refusing to consider, "any relevant mitigating evidence." Eddings, 455 U.S. at 114.

The sentencing court in Medlock's case did not indicate that it was excluding from consideration the mitigating effect of Medlock's expressed desire to minimize his threat to society, which would have contravened Lockett and Eddings. The fact that the court may have relied on his statement as aggravating evidence does not necessarily render its sentence constitutionally invalid. See Johnson v. Texas, 509 U.S. 350, 368 (1993) (holding that "the fact that a juror

-10-

might view [particular evidence] as aggravating, as opposed to mitigating, does not mean that the rule of Lockett is violated" (citing Graham v. Collins, 506 U.S. 461, 475-76 (1993))); see also Penry v. Lynaugh, 492 U.S. 302, 324 (1989) (recognizing that mitigating evidence can function as a "two-edged sword" during sentencing, in effect operating as both mitigating and aggravating evidence); Eddings, 455 U.S. at 114-115 ("The sentencer, and the Court of Criminal Appeals on review, may determine the weight to be given relevant mitigating evidence.").

While the Oklahoma Court of Criminal Appeals found this evidence improper for supporting the continuing threat aggravator, the court nevertheless upheld the sentencing court's finding of that aggravator. Contrary to Medlock's assertion, the Court of Criminal Appeals was under no obligation, as a matter of constitutional law, to reweigh the aggravating and mitigating factors.[3] The sentencer's finding of the continuing threat aggravating circumstance was upheld by the Oklahoma Court of Criminal Appeals; that court simply disapproved of one proffered reason for the finding, which in itself does not violate Lockett.

---

[3] The Oklahoma Court of Criminal Appeals did conduct a mandatory review of Medlock's death sentence, pursuant to Okla. Stat. tit. 21, § 701.13(C). See Medlock v. State, 887 P.2d at 1351. This review does not represent a full reweighing of aggravating and mitigating factors.

-11-

See Johnson, 509 U.S. at 368. [4]

Apart from his facial challenge to the continuing threat aggravator and his claim that consideration of mitigating evidence in support of the aggravator violated Lockett, Medlock does not otherwise challenge on appeal the sufficiency of the evidence to support the district court's finding of the continuing threat aggravator.

**D**

Medlock challenges the "heinous, atrocious, or cruel" aggravator not only facially but also as applied. He argues that the State presented insufficient evidence that Medlock's conduct fell within Oklahoma's "narrowed," and therefore constitutional, construction of the aggravator.

In Maynard v. Cartwright, 486 U.S. 356, 363-64 (1988), the Supreme Court determined that Oklahoma's "especially heinous, atrocious, or cruel" aggravator

---

[4] Medlock cites Clemons v. Mississippi, 494 U.S. 738 (1990), for the proposition that the state appeals court was constitutionally required to reweigh the aggravating and mitigating circumstances after finding the sentencing court improperly relied on Medlock's statement to support the continuing threat aggravating circumstance. His reliance on Clemons is misplaced. That case stands for the proposition that a death sentence imposed based on a constitutionally invalid aggravating circumstance is unconstitutional absent either "reweighing of the aggravating and mitigating evidence" or "harmless error review" by the appellate court. Id. at 741. Unlike in Clemons, the application of the continuing threat aggravating circumstance in this case has never been invalidated. Neither the Supreme Court, nor any decision of which we are aware, has held that a state court's rejection of one of several grounds for finding an aggravating circumstance at the same time as it otherwise upholds the finding of that circumstance, would trigger the reweighing or harmless error review contemplated by Clemons.

-12-

was vague and overbroad unless construed sufficiently narrowly. Oklahoma has since adopted a constitutional narrowing construction of the aggravator, which provides that the victim's murder—to be deemed "especially heinous, atrocious, or cruel"—must have been "preceded by torture or serious physical abuse." Turrentine v. State, 965 P.2d 955, 976-77 (Okla. Crim. App. 1998); see also Hatch, 58 F.3d at 1468-69 (holding the narrowing construction to be constitutional). Torture includes "the infliction of either great physical anguish or extreme mental cruelty." Turrentine, 965 P.2d at 976 (citing Berget v. State, 824 P.2d 364, 373 (Okla. Crim. App. 1991)). With respect to the physical anguish branch of the Oklahoma test, "[a]bsent evidence of conscious physical suffering by the victim prior to death, the required torture or serious physical abuse standard is not met. " Cheney v. State, 909 P.2d 74, 80 (Okla. Crim. App. 1995) (quoting Battenfield v. State, 816 P.2d 555, 565 (Okla. Crim. App. 1991)) (internal quotations omitted).

We have held that the "heinous, atrocious, or cruel" aggravating circumstance as narrowed by the Oklahoma courts after Maynard to require torture or serious physical abuse characterized by conscious suffering can provide a principled narrowing of the class of those eligible for death. See, e.g. , Hatch , 58 F.3d at 1468-69. [5] Medlock fails to demonstrate that Oklahoma has applied its

_____

[5] Although the Supreme Court has suggested that the condition of torture or

(continued...)

narrowing construction in an unconstitutional manner.

Medlock argues that the evidence—even examined in the light most favorable to the prosecution—is insufficient to support the narrowed "heinous, atrocious, or cruel" aggravator because evidence regarding conscious suffering by the victim is absent. See Turrentine, 965 P.2d at 976-77 (finding inconsistent evidence failed to support the aggravator because it was unclear whether the victims experienced conscious suffering). Whether we treat this challenge as a legal determination under 28 U.S.C. § 2254(d)(1), or one of fact under 28 U.S.C. § 2254(d)(2), the result is the same. See Moore v. Gibson, 195 F.3d 1152, 1177 (10th Cir. 1999).[6]

Medlock fails to demonstrate that a rational factfinder could not conclude that his crime, occurring in several gruesome phases, involved torture or serious physical abuse characterized by conscious suffering. The evidence, including Medlock's confessions, suggests that he repeatedly grabbed his victim by the arm, wrestled with her, struck her in the face, threw her onto his bed, and covered her

---

[5](...continued)
serious physical abuse characterized by conscious suffering is not the only permissible narrowing construction for this aggravating circumstance, see Maynard , 486 U.S. at 365, we are faced with no alternative narrowing construction today.

[6] Whether Section 2254(d)(1) or 2254(d)(2) applies to our review of the sufficiency of the evidence to support an aggravator is unsettled in our Circuit because we have applied both in the past, sometimes analyzing the sufficiency of the evidence as a factual question and sometimes as a legal question. See Moore v. Gibson , 195 F.3d 1152, 1176-77 (10th Cir. 1999).

mouth when she began screaming. See Medlock v. State, 887 P.2d at 1338, 1348. He choked her until she temporarily passed out, then dragged her to the toilet and stuck her head into the bowl while she was conscious and gasping for air, keeping her there for ten minutes until she passed out again. See id. at 1338. When he noticed she was still breathing and alive, he used a steak knife to stab her in the back of the neck and, when that knife bent, took a hunting knife and stabbed her in the back of the neck again until she died. See id.

This body of evidence is sufficient to fall within the narrowed scope of the "especially heinous, atrocious, or cruel" aggravator. Taking the facts together, we conclude it was neither "an unreasonable determination of the facts in light of the evidence presented" nor an "unreasonable application of clearly established federal law" for the sentencer to conclude that conscious suffering was present. We also recognize that "the AEDPA increases the deference to be paid by the federal courts to the state court's factual findings and legal determinations." Houchin v. Zavaras, 107 F.3d 1465, 1470 (10th Cir. 1997). In light of the foregoing, we conclude there was sufficient evidence of conscious suffering to preserve the constitutionality of the Oklahoma court's application of the "heinous, atrocious, or cruel" aggravating circumstance.[7]

---

[7] Medlock argues that the Oklahoma district court improperly relied on evidence concerning the condition of the victim's underwear during the sentencing phase of the trial to support the existence of the "heinous, atrocious, or cruel" aggravating

(continued...)

-15-

**V**

Medlock sought to raise an ineffective assistance of counsel claim in his federal habeas petition, the basis of which was not raised in his application for state post-conviction relief. The federal district court alluded to the possibility that Medlock's ineffective assistance of counsel claim may have been procedurally barred. But the court chose not to decide the question of procedural bar, instead denying Medlock's petition on the merits, pursuant to 28 U.S.C. § 2254(b)(2), which states that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state." The district court thus acted pursuant to statute when it chose to deny Medlock's ineffective assistance claim on the merits. However, we elect instead to deny his claim due to procedural bar, with regard to which Medlock has not shown cause for failing to exhaust his state remedies.

In general, petitioners must exhaust available state court remedies before seeking federal habeas relief. See 28 U.S.C. § 2254(b)(1); Smallwood v. Gibson, 191 F.3d 1257, 1267 (10th Cir. 1999). In the present case, Medlock "has not . . . raised before the state courts any of the bases upon which his current ineffective

---

[7](...continued)
circumstance. Even if the court improperly admitted that evidence, however, the remaining body of evidence was in itself so overwhelming that the allegedly erroneous admission constituted, at most, harmless error.

assistance of counsel claim[] rel[ies]." Smallwood, 191 F.3d at 1267. Therefore, he has failed to exhaust his ineffective assistance claim.

In Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991), the Supreme Court held that if "the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," petitioner's claims are procedurally defaulted for purposes of federal habeas corpus relief. Oklahoma deems waived claims that were not raised in an initial application for post-conviction relief in a death penalty case. See Okla. Stat. tit. 22, §§ 1086, 1089(D)(2). Medlock did not raise his present ineffective assistance claim, involving the failure of his counsel to investigate and present at sentencing his family's history of mental illness, in his application for state post-conviction relief, and therefore it is barred under Oklahoma law. See Smallwood, 191 F.3d at 1269.

We may not consider issues raised in a habeas petition "that have been defaulted in state court on an independent and adequate procedural ground, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice." English v. Cody, 146 F.3d 1257, 1259 (10th Cir. 1998) (citing Coleman, 501 U.S. at 749-50; Steele v. Young, 11 F.3d 1518, 1521 (10th Cir.

1993)).[8]  Despite the especially vigilant scrutiny we apply in examining procedural bars to ineffective assistance claims, we have held that Oklahoma's procedural bar to claims not raised on initial post-conviction review is independent and adequate.  See Moore v. Reynolds, 153 F.3d 1086, 1097 (10th Cir. 1998), cert. denied, 119 S.Ct. 1266 (1999).  Thus, Medlock's claim is defaulted unless he can show cause and prejudice or a fundamental miscarriage of justice.  See English, 146 F.3d at 1259.

With regard to "cause" for his procedural default, Medlock was represented by different counsel on direct appeal and on application for post-conviction relief than at trial and sentencing.  We can discern no reason for his failure to raise in state proceedings the grounds for his claim of ineffective assistance of trial counsel, and he provided no insight into that failure in his briefs or during oral argument.  Because Medlock furnishes no explanation for his failure to raise his ineffective assistance claim in the state courts, he has not shown the requisite "cause" for overcoming his procedural default.  See Coleman, 501 U.S. at 750.  Neither has he met the high threshold required to show a "fundamental miscarriage of justice."  Demarest v. Price, 130 F.3d 922, 941 (10th Cir.1997) (stating that to meet the "fundamental miscarriage of justice" standard, the

---

[8]  We consider a state's ground for procedural bar to be adequate only if it is "'strictly or regularly followed' and applied 'evenhandedly to all similar claims.'" Duvall v. Reynolds, 139 F.3d 768, 797 (10th Cir. 1998) (quoting Hathorn v. Lovorn, 457 U.S. 255, 263 (1982)), cert. denied, 119 S.Ct. 345.

-18-

petitioner must supplement his habeas claim with a colorable showing of factual innocence).

Even if his ineffective assistance claim were not procedurally barred, under the facts of this case Medlock would not be entitled to an evidentiary hearing on that claim. If a habeas petitioner fails to develop the factual basis of his habeas claim in state court, he is not entitled to a federal evidentiary hearing unless he initially shows that the claim relies on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or "a factual predicate that could not have been previously discovered through the exercise of due diligence," 28 U.S.C. § 2254(e)(2)(A)(i) and (ii), or else demonstrates by clear and convincing evidence that "but for constitutional error, no reasonable factfinder" would have found him guilty, 28 U.S.C. § 2254(e)(2)(B). Medlock has made no such showing here. Therefore, he is not entitled to an evidentiary hearing on his ineffective assistance of counsel claim.

**VI**

Because Medlock has not set forth a claim that his sentence is unconstitutional sufficient to warrant federal habeas relief under AEDPA, and because his ineffective assistance of counsel claim is procedurally barred, we

-19-

**AFFIRM** the district court's denial of his habeas petition.

99-6089, Medlock v. Ward, et al.

**LUCERO** , Circuit Judge, concurring.

I join the majority opinion.  I am in agreement that the victim in the present case, Kathy Busch, experienced conscious suffering sufficient to meet the "torture or serious physical abuse" standard required to prove the "heinous, atrocious, or cruel" aggravating circumstance, particularly under the deferential AEDPA standard we apply when reviewing the Oklahoma sentencer's findings of fact.  I write separately, however, to note that, in order to conduct a proper analysis of the sentencer's application of the "heinous, atrocious, or cruel" aggravator, I think it essential to set forth the Oklahoma test for conscious suffering we have found to satisfy the requirements of the Eighth Amendment.  Thus, to evaluate whether the "heinous, atrocious, or cruel" aggravating circumstance was properly applied, we must examine the state court's findings as to the duration of conscious suffering on the part of the victim.

Under the Eighth Amendment, applying the narrowing construction of the aggravating circumstance in a manner that permitted Oklahoma courts to find "torture or serious physical abuse" based merely on the brief period of conscious suffering necessarily present in virtually all murders would fail to narrow the sentencer's discretion as required by    Godfrey v. Georgia   , 446 U.S. 420 (1990), and    Maynard v. Cartwright , 486 U.S. 356 (1988), leaving the sentencer "with the kind of open-ended discretion which was held invalid in    Furman v. Georgia   , 408 U.S. 238 (1972)." Maynard , 486 U.S. at 361-62.  In interpreting the limiting construction we approved in Hatch v. State   , 58 F.3d 1447, 1468-69 (10th Cir. 1995), the Oklahoma Court of Criminal Appeals ("OCCA") has identified two kinds of cases in which "torture or

serious physical abuse" is present: those characterized by the infliction of "great physical anguish" and those characterized by the infliction of "extreme mental cruelty". Cheney v. State, 909 P.2d 74, 80 (Okla. Crim. App. 1995). In the mental cruelty context, the OCCA has emphasized that the torture required for finding the "heinous, atrocious, or cruel" aggravator "must produce mental anguish in addition to that which of necessity accompanies the underlying killing." Turrentine v. State, 965 P.2d 955, 976 (Okla. Crim. App. 1998) (quoting Berget v. State, 824 P.2d 364, 373 (Okla. Crim. App. 1991)). As the majority notes " [w]ith respect to the physical anguish branch of the Oklahoma test, '[a]bsent evidence of conscious physical suffering by the victim prior to death, the required torture or serious physical abuse standard is not met. ' Cheney, 909 P.2d at 80 (quoting Battenfield v. State, 816 P.2d 555, 565 (Okla. Crim. App. 1991)) (internal quotations omitted)." (Maj. Op. at 12-13.) There must be conscious suffering of more than the brief duration necessarily accompanying virtually all murders. See Turrentine, 965 P.2d at 976; see also Brown v. State, 753 P.2d 908, 913 (Okla. Crim. App. 1988) (refusing to find the aggravator where it could not be ruled out that the victim might have "only survived a few minutes at most" after being attacked) (internal quotation omitted). [1] Were this not so, the narrowing construction would not have the

---

[1] While the OCCA in Berget, 824 P.2d at 373 (quoted in Turrentine, 965 P.2d at 976), stated in the mental torture context that the duration of mental anguish is "irrelevant," that opinion indicated that the level of tension created between the killer and his victim, rather than duration, is the proper focus of

(continued...)

discretion-limiting effect required by     Godfrey and Maynard .

The Eighth Amendment therefore requires us to determine whether the state

sentencer's finding of the "heinous, atrocious, or cruel" aggravator represents the

application of a permissible narrowing construction: one requiring evidence of

torture or serious physical abuse characterized by conscious suffering on the part

of the victim.  Absent such evidence, application of the aggravator either would

"result[] in a decision that was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding," 28 U.S.C. §

2254(d)(2), or, if sufficiency of the evidence is treated as a legal question, would

"result[] in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme

Court," 28 U.S.C. §   2254(d)(1).  See Moore v. Gibson, 195 F.3d 1152, 1176-1177

(10th Cir. 1999).[2]  In either case, we review whether the sentencer properly found

sufficient evidence of torture or serious physical abuse under the deferential

---

[1](...continued)
analysis:  "Analysis must focus on the acts of the defendant toward the victim
and the level of tension created."     Berget , 824 P.2d at 373.  But, for there to be
such tension, there obviously must be some meaningful period of conscious
suffering on the victim's part.

[2] As the majority correctly notes, "[w]hether Section 2254(d)(1) or 2254(d)(2)
applies to our review of the sufficiency of the evidence to support an aggravator is
unsettled in our Circuit because we have applied both in the past, sometimes analyzing
the sufficiency of the evidence as a factual question and sometimes as a legal question.
See Moore v. Gibson  , 195 F.3d at 1176-77."  (Maj. Op. at 14 n.6.)

-3-

"'rational factfinder' standard established in <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979)" by asking "whether, 'after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the [aggravating circumstance] beyond a reasonable doubt.'" <u>Moore</u>, 195 F.3d at 1176 (quoting <u>Jackson</u>, 443 U.S. at 319) (internal quotations and further citations omitted).

Whether we apply 28 U.S.C. § 2254(d)(1) or (d)(2), I am in agreement that a rational factfinder could conclude that Medlock's crime involved torture or serious physical abuse characterized by a meaningful period of conscious suffering. The aggravating circumstance thus was properly applied in this case.