FILED
**United States Court of Appeals**
**Tenth Circuit**

**December 10, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ALFRED BRIAN MITCHELL,

    Petitioner - Appellant,

v.

TOMMY SHARP, Interim Warden,
Oklahoma State Penitentiary,

    Respondent - Appellee.

No. 16-6258
(D.C. No. 5:11-CV-00429-F)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **MATHESON**, and **McHUGH**, Circuit Judges.
_____

Alfred Brian Mitchell appeals from the federal district court's denial of his

application for a writ of habeas corpus under 28 U.S.C. § 2254.  In 1992, Oklahoma

charged Mr. Mitchell with first degree murder, robbery with a dangerous weapon, larceny

of an automobile, first degree rape, and forcible anal sodomy.  The jury found him guilty

on all counts and sentenced him to death.

The Oklahoma Court of Criminal Appeals ("OCCA") affirmed his convictions and

sentence on direct appeal.  *See Mitchell v. State* (*Mitchell I*), 884 P.2d 1186 (Okla. Crim.

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

App. 1994).[1]  In a previous § 2254 habeas proceeding, this court found that the Oklahoma

prosecutors failed to provide the defense with exculpatory DNA evidence before his guilt

trial.  We reversed Mr. Mitchell's rape and sodomy convictions under *Brady v.*

*Maryland*, 373 U.S. 83 (1963), and vacated his sentence.  *See Mitchell v. Gibson*

(*Mitchell III*), 262 F.3d 1036 (10th Cir. 2001).  We did not disturb Mr. Mitchell's murder

conviction.

A newly constituted jury sentenced Mr. Mitchell to death a second time.  On direct

appeal, the OCCA reversed, citing "serious error in numerous aspects of [Mr.] Mitchell's

resentencing." *Mitchell v. State* (*Mitchell IV*), 136 P.3d 671, 712 (Okla. Crim. App.

2006).  On remand to a new judge and a new jury, Mr. Mitchell was sentenced to death a

third time.  The OCCA affirmed, *Mitchell v. State* (*Mitchell V*), 235 P.3d 640 (Okla.

Crim. App. 2010), and this § 2254 habeas proceeding ensued.

---

[1] From 1994 through 2016, multiple courts have issued opinions in this case.  The following chart provides the case citations and corresponding short citations used in this opinion.

| Decision | Short Citation |
|---|---|
| *Mitchell v. State*, 884 P.2d 1186 (Okla. Crim. App. 1994) | *Mitchell I* |
| *Mitchell v. Ward*, 150 F. Supp. 2d 1194 (W.D. Okla. 1999) | *Mitchell II* |
| *Mitchell v. Gibson*, 262 F.3d 1036 (10th Cir. 2001) | *Mitchell III* |
| *Mitchell v. State*, 136 P.3d 671 (Okla. Crim. App. 2006) | *Mitchell IV* |
| *Mitchell v. State*, 235 P.3d 640 (Okla. Crim. App. 2010) | *Mitchell V* |
| *Mitchell v. Duckworth*, No. 11-429, 2016 WL 4033263 (W.D. Okla. July 27, 2016) | *Mitchell VI* |

The district court denied relief on all of Mr. Mitchell's claims and denied his request for a certificate of appealability ("COA"). *Mitchell v. Duckworth* (*Mitchell VI*), No. 11-429, 2016 WL 4033263 (W.D. Okla. July 27, 2016); *see* 28 U.S.C. § 2253(c)(1)(A) (requiring a COA to appeal "the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court"). This court granted COAs as to whether:

> (1) "Oklahoma's capital-sentencing statute is unconstitutional because it does not require a unanimous jury to find that the aggravating factors outweigh the mitigating factors by proof beyond a reasonable doubt." Order Granting COA, Doc. 10551958 at 2.

> (2) "Oklahoma's 'heinous, atrocious, or cruel' (HAC) aggravating circumstance is unconstitutional." *Id.* at 3.

> (3) "Mr. Mitchell had a state-created liberty interest in being convicted and sentenced by the same jury under Okla. Stat. tit. 21, § 701.10, and that, under *Hicks v. Oklahoma*, 447 U.S. 343 (1980), his due process rights were unconstitutionally impaired when, on remand from this court, he was resentenced by a new jury in 2002." Order Granting Third COA, Doc. 10579703 at 1-2.

Exercising jurisdiction under 28 U.S.C. §§ 1291 and 2253, we affirm.

## I. **BACKGROUND**

We begin with the relevant factual history as presented by the OCCA.[2] We then provide an overview of the procedural history leading to this appeal. We present additional background below as relevant to our discussion of Mr. Mitchell's claims.

---

[2] *See* 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting

3

## A. *Factual Background*

In *Mitchell V*, the OCCA summarized the facts as follows:

> Briefly stated, on January 7, 1991, Alfred Brian Mitchell found Elaine Scott alone at the Pilot Recreation Center in Oklahoma City. The evidence presented at the resentencing established that [Mr.] Mitchell first attacked [Ms.] Scott near the Center's library, where a spot of blood, one of [Ms.] Scott's earrings, and a sign that she had been hanging were later found on the floor. [Ms.] Scott apparently ran for the innermost room of the Center's staff offices—as she had told her mother she would if she ever found herself in a dangerous situation at the Center—where there was a phone and a door that she could lock behind her. She almost made it. Although the exact sequence of events is unclear, the State established that [Ms.] Scott's clothing was taken off and that a violent struggle ensued, in which [Mr.] Mitchell beat and battered [Ms.] Scott, using his fists, a compass, a golf club (which ended up in pieces), and a wooden coat rack. The forensic evidence—including the condition of [Ms.] Scott's nude, bruised, and bloodied body—established that she was moving throughout the attack, until the final crushing blows with the coat rack, which pierced her skull and ended her life.

235 P.3d at 646 (quotations omitted). Because Mr. Mitchell does not dispute these facts, we presume they are correct. *See* 28 U.S.C. § 2254(e)(1) ("In a [habeas corpus] proceeding instituted . . . by a person in custody pursuant to the judgment of a State court, a determination of factual issue made by a State court shall be presumed to be correct.").

---

the presumption of correctness by clear and convincing evidence."); *see also Al-Yousif v. Trani*, 779 F.3d 1173, 1181 (10th Cir. 2015) ("The presumption of correctness also applies to factual findings made by a state court of review based on the trial record." (quotations omitted)).

4

### B. *Procedural Background*

In 1992, in the District Court of Oklahoma County, a jury convicted Mr. Mitchell of first-degree malice aforethought murder, in violation of Okla. Stat. tit. 21, § 701.7; robbery with a dangerous weapon, in violation of Okla. Stat. tit. 21, § 801; larceny of an automobile, in violation of Okla. Stat. tit. 21, § 1720; first-degree rape, in violation of Okla. Stat. tit. 21, §§ 1111, 1114; and forcible anal sodomy, in violation of Okla. Stat. tit. 21, § 888. *See Mitchell I*, 884 P.2d at 1191. The same jury recommended a death sentence for the murder. *Id.* The trial court sentenced Mr. Mitchell to death for the murder and to 170 years in prison for the other felonies. *Id.*

### 1. First Sentencing

Mr. Mitchell's jury based its death sentence recommendation on three aggravating circumstances: (1) the murder was especially heinous, atrocious, or cruel ("HAC"); (2) the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution; and (3) Mr. Mitchell posed a continuing threat to society. *Mitchell I*, 884 P.2d at 1191; *see* Okla. Stat. tit. 21, § 701.11 (requiring Oklahoma juries to find at least one aggravating circumstance beyond a reasonable doubt before imposing the death penalty). The OCCA affirmed the convictions and sentence. *Mitchell I*, 884 P.2d at 1209.

In 1997, Mr. Mitchell filed his first federal habeas application under 28 U.S.C. § 2254 after seeking post-conviction relief in state court. Among other things, he asserted that his convictions for rape and sodomy were constitutionally infirm because

(1) the State failed to disclose exculpatory evidence in violation of *Brady v. Maryland*;

(2) testimony from the state's forensic chemist (Joyce Gilchrist) was false and

misleading; and (3) the prosecution engaged in egregious misconduct by capitalizing

on her testimony to mislead the jury. Mr. Mitchell further argued that any

constitutional error on the rape and sodomy charges should result in habeas relief from

his death sentence. Following an evidentiary hearing, the district court granted the

writ on the rape and sodomy convictions. It explained:

> [T]he State's blatant withholding of unquestionably
> exculpatory evidence is absolutely indefensible. [Ms.]
> Gilchrist's trial testimony that the DNA analysis performed
> by the FBI was "inconclusive" "as to [Petitioner]" was,
> without question, untrue. Over a year before Petitioner was
> tried and convicted of rape and anal sodomy, Agent Vick's
> DNA testing revealed that *Petitioner's DNA was not present
> on the samples tested*.
>
> Petitioner's trial counsel did not receive copies of the
> autoradiographs developed by Agent Vick. Petitioner's
> trial counsel did not receive copies of [Ms.] Gilchrist's
> notes, which demonstrate that she, too, was confident that
> only Ms. Scott's DNA was present on the vaginal swab and
> that only Ms. Scott and [Ms. Scott's boyfriend, Phil
> Taylor's,] DNA was present on the panties. Instead, the
> prosecution turned over only the formal FBI report
> discussed above which, *at best*, is unclear and ambiguous.
>
> Just as troubling to this Court is the fact that the State
> labored extensively at trial to obscure the true DNA test
> results and to highlight [Ms.] Gilchrist's test results, which
> admittedly have a much lower degree of certainty than the
> DNA testing. [Ms.] Gilchrist testified at trial that the results
> of her blood tests were consistent with both [Mr.] Taylor
> and [Mr.] Mitchell. While the only foreign DNA found was
> consistent only with [Mr.] Taylor, the prosecution
> emphasized [Ms.] Gilchrist's test results and told the jury

the DNA testing was "inconclusive." At the same time, the prosecution withheld the true facts from the defense, thereby preventing effective cross-examination. . . .

In closing argument, the prosecution capitalized on the FBI report and placed its own twist on the report. The prosecution told the jury there were no DNA results because the testing was "inconclusive" because of "low molecular weight and degraded sample of DNA." It is clear that this statement is entirely unsupported by evidence and is misleading—the prosecution had DNA results which excluded [Mr.] Mitchell as the donor of the samples tested.

*Mitchell v. Ward* (*Mitchell II*), 150 F. Supp. 2d 1194, 1226-27 (W.D. Okla. 1999) (citations omitted). The court, however, declined to vacate Mr. Mitchell's death sentence, explaining that "[t]he jury had sufficient evidence to justify its conclusion that the three aggravating circumstances it found were present, even without the rape and sodomy convictions." *Id.* at 1230.

Mr. Mitchell appealed the district court's decision to this court, arguing the invalid rape and sodomy convictions required vacatur of his death sentence. We agreed and explained that "[s]exual assault charges are by their nature highly inflammatory and prejudicial." *Mitchell III*, 262 F.3d at 1065. We added that if those charges had not been before the jury, "[b]oth the guilt and sentencing stages would necessarily have had a different focus and character." *Id.* We explained:

[W]e simply cannot be confident that the jury would have returned the same sentence had no rape and sodomy evidence been presented to it [because that] evidence impacted all three of the aggravating circumstances found by the jury: that the murder was heinous, atrocious, and cruel; that it was committed to avoid arrest for the rape and

7

sodomy; and that Mr. Mitchell posed a continuing threat to society.

*Id.* We reversed Mr. Mitchell's death sentence and granted a conditional writ of habeas corpus requiring that he be resentenced. *Id.* at 1066.

2. **Second Sentencing**

After our decision, a newly constituted state court jury again recommended that Mr. Mitchell be sentenced to death. The Oklahoma state district court reimposed the death penalty, and Mr. Mitchell appealed to the OCCA. *Mitchell IV*, 136 P.3d at 676. The OCCA "found serious error in numerous aspects of [his] resentencing." *Id.* at 712.[3] It vacated Mr. Mitchell's sentence and ordered a new re-sentencing before a different judge and jury "because of the substantial evidence of trial court bias contained in the record." *Id.* at 713.

3. **Third Sentencing**

On remand, yet another jury recommended that Mr. Mitchell be sentenced to death. This time, the jury found only the HAC aggravator—that the murder was "especially heinous, atrocious, or cruel." *Mitchell V*, 235 P.3d at 645. The trial court

---

[3] The OCCA found that the trial court abused its discretion by (1) allowing the state to make certain arguments about the "avoid arrest" aggravating circumstance, (2) denying defense counsel the opportunity to question certain prospective jurors, and (3) allowing the State to present graphic photographic and video evidence. *Mitchell IV*, 136 P.3d at 712. The OCCA also found the trial court erroneously excluded Mr. Mitchell's mitigating character evidence, allowed testimony from certain witnesses, and failed "to prevent or ameliorate" "serious prosecutorial misconduct" by the resentencing prosecutor. *Id.*

sentenced Mr. Mitchell in accordance with the jury's recommendation, and Mr. Mitchell appealed to the OCCA, raising 18 claims of error. *Id.* at 645-46. The OCCA found no reversible error and affirmed Mr. Mitchell's death sentence. *Id.* at 666. Mr. Mitchell filed for post-conviction relief, which the OCCA denied. The Supreme Court also denied his petition for a writ of certiorari. *Mitchell v. Oklahoma*, 562 U.S. 1293 (2011).

4. **Section 2254 Application and COAs**

Mr. Mitchell filed the underlying § 2254 habeas application, asserting 21 grounds for relief. *See Mitchell VI*, 2016 WL 4033263, at *2. The district court denied relief, *id.*, and denied a COA on all claims, ROA at 387-88.

Mr. Mitchell then requested COAs from this court. *See* 28 U.S.C. § 2253(c)(1)(A) (requiring habeas petitioners to obtain a COA); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (same). We granted COAs on three issues: (1) whether Oklahoma's sentencing statute is unconstitutional under the Sixth Amendment because it allows imposition of the death penalty without a jury finding that the HAC aggravator outweighed any mitigating circumstances beyond a reasonable doubt (the "*Hurst* claim"), (2) whether the Oklahoma HAC aggravator is unconstitutional under the Eighth Amendment (the "HAC claim"), and (3) whether Mr. Mitchell was deprived of due

9

process because the same jury did not determine his guilt and punishment (the "*Hicks* claim").[4]

We address each issue below.

## II. **DISCUSSION**

### A. *Standard of Review*

The three issues in this appeal are "governed by the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA'), which requires federal courts to give significant deference to state court decisions." *Lockett v. Trammell*, 711 F.3d 1218, 1230 (10th Cir. 2013). Under AEDPA, when a state court has decided a claim on the merits, we must defer to the court's adjudication unless it:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

---

[4] In his initial request for a COA, Mr. Mitchell presented four claims: (1) a *Brady* claim, (2) the *Hurst* claim, (3) the HAC claim, and (4) an Eighth Amendment claim under *Roper v. Simmons*, 543 U.S. 551, 578 (2005). *See* Aplt. Stmt. of Issues, Doc. 10486954. He acknowledged the court could not grant a COA on the fourth claim but nonetheless presented it to preserve it for Supreme Court review. *Id.* at 83. After this court denied a COA on all claims, Mr. Mitchell submitted a renewed motion, which raised only the *Hurst* claim, the HAC claim, and the *Hicks* claim. *See* Renewed Request for COA, Doc. 10507440 at 2.

"Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (alterations and quotations omitted). It "consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*." *House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008) (discussing *Carey v. Musladin*, 549 U.S. 70 (2006)). "An OCCA decision is 'contrary to' a clearly established law if it applies a rule different from the governing law set forth in Supreme Court cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts." *Lockett*, 711 F.3d at 1231 (alterations and quotations omitted); *see also Bell v. Cone*, 543 U.S. 447, 452-54 (2005). "An OCCA decision is an 'unreasonable application' of clearly established federal law if it identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of petitioner's case." *Lockett*, 711 F.3d at 1231 (quotations omitted).

B. *Analysis of the Three Issues on Appeal*

We address the three issues for which we have granted a COA: (1) the Sixth Amendment *Hurst* claim, (2) the Eighth Amendment HAC claim, and (3) the due process *Hicks* claim. As to all three, we conclude the OCCA's adjudication was not contrary to or an unreasonable application of clearly established Supreme Court law.[5] We therefore affirm the district court's denial of habeas relief on all claims.

---

[5] Mr. Mitchell does not argue that the OCCA's decisions involved unreasonable factual determinations. *See* 28 U.S.C. § 2254(d)(2) (allowing for habeas relief where a

11

1. **Sixth Amendment *Hurst* Claim**

Before the OCCA and in his § 2254 application, Mr. Mitchell claimed his death sentence was unconstitutional under the Sixth Amendment because the jury was not instructed to find beyond a reasonable doubt that the HAC aggravator outweighed the mitigating evidence. He argued that *Hurst v. Florida*, 136 S. Ct. 616 (2016), "requires the weighing decision to rest on proof beyond a reasonable doubt." Pet'r. Corr. First Supp. Br., Doc. 10558627 at 20. Mr. Mitchell first raised this claim in his direct appeal from his third sentencing. *See Mitchell V*, 235 P.3d at 665. The OCCA rejected it on the merits, *see id.*, and the district court denied habeas relief, *see Mitchell VI*, 2016 WL 4033263, at *37.

Below, we provide additional legal background on the *Hurst* claim. We then examine the OCCA's merits decision under § 2554(d)(1). We affirm the district court because the OCCA's decision was not contrary to or an unreasonable application of Supreme Court law. Mr. Mitchell concedes that circuit precedent compels this result.

a. *Additional legal background*

The Fourteenth Amendment right to due process and the Sixth Amendment right to a jury trial entitle a criminal defendant to "a jury determination that he is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000) (alterations and quotations omitted).

---

state court's decision "resulted in a decision that was based on an unreasonable determination of the facts"). We therefore review his claims under only § 2254(d)(1).

In *Apprendi*, the Supreme Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490; *see also Hurst*, 136 S. Ct. at 624 (invalidating Florida's capital sentencing scheme, "which required the judge alone to find the existence of an aggravating circumstance").

Under Oklahoma's capital sentencing scheme, the death penalty may not be imposed "[u]nless at least one of the statutory aggravating circumstances . . . is [found by a unanimous jury beyond a reasonable doubt] or if it is found that any such aggravating circumstance is outweighed by the finding of one or more mitigating circumstances." Okla. Stat. tit. 21, § 701.11. In *Matthews v. Workman*, 577 F.3d 1175 (10th Cir. 2009), a habeas petitioner brought an *Apprendi* challenge to this scheme, arguing the jury should "have been instructed that it had to find *beyond a reasonable doubt* that aggravating factors outweighed the mitigating." *Id.* at 1195. We denied relief, holding that the weighing of aggravating and mitigating circumstances is not subject to the *Apprendi* rule because it "is not a finding of fact . . . but a highly subjective, largely moral judgment regarding the punishment that a particular person deserves." *Id.* (quotations omitted).

We likewise rejected an *Apprendi* challenge to Oklahoma's capital sentencing scheme in *Underwood v. Royal*, 894 F.3d 1154 (10th Cir. 2018). In that case, as in *Matthews*, the petitioner argued the jury should have been instructed to find beyond a reasonable doubt that the aggravating circumstances outweighed the mitigating circumstances. *Underwood*, 894 F.3d at 1185. We held that "*Matthews* foreclose[d] us

13

from concluding . . . that the OCCA contradicted or unreasonably applied *Apprendi* in [denying the petitioner's] claim." *Id.* at 1185-86. We also concluded "*Hurst* [did] not supply a superseding contrary Supreme Court decision that would allow us to overrule *Matthews*." *Id.* at 1186. We therefore denied the petitioner's request for habeas relief.

b. *Analysis*

Reviewing under § 2254(d)(1), we conclude the OCCA's denial of Mr. Mitchell's *Hurst* claim was not contrary to or an unreasonable application of clearly established Supreme Court law. We therefore affirm the district court's denial of habeas relief.

As discussed above, *Matthews* held that Oklahoma's capital sentencing scheme does not violate *Apprendi* even though it does not require the jury to find the aggravating circumstances outweigh the mitigating circumstances beyond a reasonable doubt. *See Matthews*, 577 F.3d at 1195. "We are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court." *United States v. Meyers*, 200 F.3d 715, 720 (10th Cir. 2000) (emphasis and quotations omitted). We therefore cannot hold that the OCCA decision was contrary to or an unreasonable application of *Apprendi*.

In his early briefing, Mr. Mitchell urged us to reconsider our holding in *Matthews* in light of "*Hurst*, which condemned Florida for removing the weighing decision from the jury [and] undercuts the Tenth Circuit's approach." Pet'r. Corr. First Supp. Br., Doc. 10558627 at 27. *Underwood* forecloses this argument. It held that "*Hurst* does not supply a superseding contrary Supreme Court decision that would allow us to overrule

14

*Matthews*." *Underwood*, 894 F.3d at 1186. Mr. Mitchell now concedes as much. In response to this court's request for supplemental briefing on the impact of *Underwood* on this appeal, he said, "[Mr.] Mitchell is forced to concede that [*Underwood*] precludes this panel from granting relief on [this claim]. Relief must come from a higher court." Pet'r. Second Supp. Br., Doc. 10574880 at 1.

Because *Matthews* held that Oklahoma's capital sentencing scheme does not violate *Apprendi*, and because we rejected an identical challenge in *Underwood*, we cannot conclude that the OCCA's decision was contrary to or an unreasonable application of clearly established Supreme Court law. We therefore affirm the district court's denial of habeas relief on Mr. Mitchell's *Hurst* claim.

### 2. Eighth Amendment HAC Aggravator Claim

Mr. Mitchell argues Oklahoma's HAC aggravator is unconstitutional under the Eighth Amendment. *See* Pet'r. Corr. First Supp. Br., Doc. 10558627 at 1-8, 11.[6] The OCCA rejected this argument when Mr. Mitchell raised it in his direct appeal from his second and third sentencings. *See Mitchell IV*, 136 P.3d at 711; *Mitchell V*, 235 P.3d at

---

[6] In *Pavatt v. Carpenter*, 928 F.3d 906 (10th Cir. 2019) (en banc), we recognized that a petitioner may bring two types of HAC aggravator claims: (1) a *Jackson* claim, "which relies on the Due Process Clause of the Fourteenth Amendment" to allege there was insufficient evidence to establish the aggravator, or (2) an Eighth Amendment claim challenging the constitutionality of the aggravator. *Id.* at 924 n.6; *see Jackson v. Virginia*, 443 U.S. 307, 315-16 (1979). In the OCCA and in federal district court, Mr. Mitchell made both a sufficiency-of-the evidence and an Eighth Amendment vagueness challenge to the HAC aggravator. But he did not seek—nor have we granted—a COA on his separate sufficiency-of-the-evidence claim. We thus address only his Eighth Amendment challenge.

15

662. The district court likewise rejected the claim when it denied relief in the underlying habeas proceeding. *See Mitchell VI*, 2016 WL 4033263, at \*34.

We (a) provide additional legal background on Mr. Mitchell's HAC aggravator claim and (b) examine the OCCA's merits decision under § 2254(d). We conclude the decision was not contrary to or an unreasonable application of Supreme Court law. We therefore affirm the district court's denial of habeas relief on Mr. Mitchell's HAC claim.

a. *Additional legal background*

Oklahoma's HAC aggravator permits the imposition of the death sentence if a jury unanimously finds beyond a reasonable doubt that "[t]he murder was especially heinous, atrocious, or cruel." Okla. Stat. tit. 21, § 701.12(4); *see id.* at § 701.11. In *Maynard v. Cartwright*, 486 U.S. 356 (1988), the Supreme Court held that Oklahoma's HAC aggravator was unconstitutionally vague. *Id.* at 363-64. In a previous case, *Godfrey v. Georgia*, 446 U.S. 420 (1980), the Court stated that even if an aggravator is unconstitutionally vague on its face, it may be constitutional if the state "tailor[s] and appl[ies] [the aggravator] in a manner that avoids the arbitrary and capricious infliction of the death penalty." *Id.* at 428. Consistent with this precedent, the *Maynard* Court said that a "limiting construction" requiring "torture or serious physical abuse . . . would [make Oklahoma's HAC aggravator] constitutionally acceptable." 486 U.S. at 365.

After *Maynard*, the OCCA adopted such a limiting construction. *See Stouffer v. State*, 742 P.2d 562, 563 (Okla. Crim. App. 1987) ("[W]e now . . . restrict [the HAC aggravator's] application to those murders in which torture or serious physical abuse is

16

present."); *Cheney v. State*, 909 P.2d 74, 80 (Okla. Crim. App. 1995) ("Absent evidence of conscious physical suffering of the victim prior to death, the required torture or serious physical abuse standard is not met." (quotations omitted)). This court has repeatedly held that under this limiting construction, Oklahoma's HAC aggravator is not unconstitutionally vague. *See, e.g.*, *Medlock v. Ward*, 200 F.3d 1314, 1319 (10th Cir. 2000) ("Our Circuit has . . . upheld the facial constitutionality of [the HAC aggravator] as 'narrowed' by the State of Oklahoma, and we are bound by that body of precedent."); *Hatch v. State*, 58 F.3d 1447, 1468-69 (10th Cir. 1995) ("In response to [*Maynard*], the [OCCA] adopted a limiting construction . . . . That narrowing interpretation of the [HAC] aggravator has been cited with approval by the Supreme Court."), *overruled on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001) (en banc).

   b. *Analysis*

Reviewing under § 2254(d)(1),[7] we conclude the OCCA's application of the HAC aggravator was not contrary to or an unreasonable application of clearly established

---

[7] Mr. Mitchell presented his HAC aggravator argument on direct appeal from his second and third sentencings. On direct appeal from the second sentencing, the OCCA rejected the argument, explaining "[it had] repeatedly rejected the claim that [the HAC] aggravator, as narrowed by this court, is unconstitutionally vague." *Mitchell IV*, 136 P.3d at 711. On appeal from the third sentencing, the OCCA rejected the claim because "[Mr. Mitchell's] argument [was] *res judicata* as he ha[d] previously challenged the constitutionality of the aggravator." *Mitchell V*, 235 P.3d at 662.

A state court's reliance on res judicata "provides strong evidence that the claim has already been given full consideration by the state courts." *Cone v. Bell*, 556 U.S. 449, 467 (2009). Further, Mr. Mitchell "accepts that 28 U.S.C. § 2254(d) governs review

17

Supreme Court law.  We therefore affirm the district court's denial of relief as to Mr.

Mitchell's HAC aggravator claim.[8]

Mr. Mitchell argues Oklahoma's HAC aggravator is unconstitutionally vague.

Pet'r. Corr. First. Supp. Br., Doc. 10558627 at 17.[9]  He concedes that after *Maynard*,

Oklahoma courts adopted a constitutionally permissible construction of the HAC

aggravator.  Oral Arg. at 0:34-1:15.  But he claims "Oklahoma has veered off course,

returning to its prior, unlawful position."  Pet'r. Corr. First Supp. Br., Doc. 10558627

at 1.  This argument fails for two reasons.

of" his HAC claim.  Pet'r. Second Supp. Br., Doc. 10574880 at 2.  We therefore review
the issue under the AEDPA standard.

[8] The State failed to argue procedural default either in district court or on appeal.
Because of this, any affirmative defense based on the OCCA's res judicata ground for
denying relief is waived.  *See Hooks v. Ward*, 184 F.3d 1206, 1216 (10th Cir. 1999)
("There is no doubt that 'state-court procedural default . . . is an affirmative defense,' and
that the state is 'obligated to raise procedural default as a defense or lose the right to
assert the defense thereafter.'" (quoting *Gray v. Netherland*, 518 U.S. 152, 165-66
(1996)).

[9] Mr. Mitchell and the OCCA have, at various points throughout this case, treated
the HAC claim as both an as-applied and a facial challenge.  Mr. Mitchell has recently
resisted this distinction, arguing "[f]acial and as-applied challenges are not categorically
different . . . ."  Pet'r. Corr. First Supp. Br., Doc. 10558627 at 9.  But on the eve of oral
argument, he filed a letter under Federal Rule of Appellate Procedure 28(j),
"acknowledge[ing] he poses a facial challenge" to Oklahoma's HAC aggravator.  Pet'r.
28(j) Letter, Doc. 10693978 at 2; *see also* Fed. R. App. P. 28(j) (allowing parties to
provide a letter containing supplemental authority if, after briefing, "pertinent and
significant authorities come to [the] party's attention").  He conceded the same at oral
argument.  *See* Oral Arg. at 0:27-0:31.

First, the OCCA applied the previously approved narrowing construction to Mr.

Mitchell's appeal from his third sentencing. *See Mitchell V*, 235 P.3d at 664. The

narrowing construction Oklahoma adopted after *Maynard* restricts the HAC aggravator

"to those murders in which torture or serious physical abuse is present." *Stouffer*, 742

P.2d at 563; *see also Cheney*, 909 P.2d at 80 ("In accordance with the concerns raised in

*Maynard*, [the OCCA] has limited [the HAC aggravator] to cases in which the State

proves beyond a reasonable doubt that the murder . . . was preceded by torture or serious

physical abuse . . . ."). This circuit has approved that narrowing construction, *see*

*Medlock*, 200 F.3d at 1319, and Mr. Mitchell concedes it is constitutional, *see* Oral Arg.

at 0:34-1:15 (statement from Mr. Mitchell's counsel that "from the decision by the

Supreme Court in [*Maynard*] [un]til about the end of the '90s . . . the Oklahoma courts

were appropriately limiting [HAC]"). On appeal from Mr. Mitchell's third sentence, the

OCCA applied this very construction, stating, "To prove the 'especially heinous,

atrocious or cruel' aggravator, the State must show that the murder of the victim was

preceded by torture or serious physical abuse, which may include the infliction of either

great physical anguish or extreme mental cruelty." *Mitchell V*, 235 P.3d at 664. Mr.

Mitchell therefore cannot argue that the OCCA applied an unconstitutional aggravator at

his sentencing.

Second, even if there were room for debate as to whether the OCCA applied the

constitutional construction, under *Bell v. Cone*, we must presume the state court applied

the appropriately narrowed construction unless Mr. Mitchell makes an affirmative

19

showing to the contrary. *Bell*, 543 U.S. at 456. In *Bell*, the Sixth Circuit determined that the Tennessee Supreme Court failed to apply a constitutional narrowing construction of the state's HAC aggravator. *Id.* at 451-52, 455. The Supreme Court reversed, noting that "[f]ederal courts are not free to presume that a state court did not comply with constitutional dictates." *Id.* at 455. The Court further explained, "[T]he [Tennessee] Supreme Court . . . construed the aggravating circumstance narrowly and . . . followed that precedent numerous times; absent an affirmative indication to the contrary, we must presume that it did the same thing here." *Id.* at 456.

Mr. Mitchell cannot overcome this presumption. Like the state courts in *Bell*, the OCCA adopted a constitutionally permissible narrowing of the HAC aggravator and "followed that precedent numerous times." *Id.* We therefore presume the OCCA continued to apply its constitutional narrowing construction unless Mr. Mitchell can provide an "affirmative indication to the contrary." *Id.* He offers no such "affirmative indication." *Id.*

Mr. Mitchell cites *DeRosa v. State*, 89 P.3d 1124 (Okla. Crim. App. 2004), claiming it represents an "express[] reject[ion]" of the OCCA's post-*Maynard* narrowing construction. Oral. Arg. at 2:20-2:55. But he acknowledges that *DeRosa* did not explicitly abandon the OCCA's constitutional narrowing. *Id.* at 3:51-4:02. Further, the Supreme Court has explained that "a federal court may consider state court *formulations* of a limiting construction to ensure that they are consistent" but may not "review . . . state court cases to determine whether a limiting construction has been *applied* consistently."

20

*Arave v. Creech*, 507 U.S. 463, 477 (1993). Thus, even if Mr. Mitchell were correct that the *DeRosa* court applied an impermissible construction, that would not demonstrate that the OCCA has abandoned its constitutionally permissible narrowing.

Mr. Mitchell also relies on this court's panel opinion in *Pavatt v. Royal* (*Amended Pavatt Panel Op.*), 894 F.3d 1115 (10th Cir. 2017).[10] The panel held that the OCCA acted contrary to clearly established law because it "did not apply the narrowing construction [of the HAC aggravator] that [the Tenth Circuit] previously approved." *Id.* at 1132. The Tenth Circuit en banc court later vacated the panel's opinion and decided the HAC claim was procedurally barred. *See Pavatt v. Carpenter*, 928 F.3d 906, 911 (10th Cir. 2019) (en banc). Mr. Mitchell acknowledges the panel's decision no longer has precedential value. *See* Pet'r. Fourth Supp. Br., Doc. 10677634 at 2. But because "[t]he en banc court never considered the merits of the Eighth Amendment/vagueness claims," *id.* at 1 (emphasis omitted), he urges us to adopt the *Pavatt* panel's conclusion that the OCCA has "veered" away from its constitutional narrowing and "no longer limit[s] this clearly vague aggravating circumstance," *id.* at 4 (quotations omitted).

Like Mr. Mitchell's arguments about *DeRosa*, this argument is unpersuasive. The panel opinion Mr. Mitchell urges us to accept reasoned that the OCCA had drifted from the previously approved narrowing construction and had "not appl[ied] a constitutionally acceptable interpretation of [the] HAC aggravator." *Amended Pavatt Panel Op.* at 1132.

---

[10] This panel opinion amended and superseded a previous panel opinion, *Pavatt v. Royal*, 859 F.3d 920 (10th Cir. 2017).

21

But because the Supreme Court's "decisions do not authorize review of state court cases to determine whether a limiting construction has been applied consistently," *Arave*, 507 U.S. at 477 (emphasis omitted), a misapplication of the HAC aggravator in the OCCA decisions leading to and including *Pavatt* would not establish that the OCCA used an unconstitutional construction in Mr. Mitchell's case. Thus, even if we agreed with the *Pavatt* panel's view that the OCCA has applied an unconstitutional construction in some cases, that would not provide the "affirmative indication" required for Mr. Mitchell to overcome *Bell*. 543 U.S. at 456.

Because Mr. Mitchell offers no "affirmative indication," *id.*, to suggest the OCCA has "not compl[ied] with constitutional dictates," *id.* at 455, "we must presume" the OCCA construed the HAC aggravator narrowly, *id.* at 456. The OCCA's application of the HAC aggravator was therefore not "contrary to" or "an unreasonable application of[] clearly established Federal law." 28 U.S.C. § 2254(d). We thus affirm the district court's denial of habeas relief on Mr. Mitchell's HAC aggravator claim.

3. **Due Process *Hicks* Claim**

Mr. Mitchell argues his resentencing violated Oklahoma Statutes §§ 701.10 and 701.10a, which provide that in a death penalty case, guilt and sentencing proceedings must be conducted before the same trial jury. He contends this state law violation qualifies as a due process violation under *Hicks*. The OCCA rejected this claim as "barred by the doctrine of *res judicata*." *Mitchell V*, 235 P.3d at 653. We (a) provide

22

an overview of the relevant law and (b) examine the merits of Mr. Mitchell's *Hicks* claim

under § 2254(d)(1).  We affirm the district court's denial of habeas relief.

a.  *Legal background*

The following (i) quotes the relevant Oklahoma statutes, (ii) summarizes the

Supreme Court's *Hicks* decision, and (iii) provides additional legal background on

the AEDPA standard.

i.  Oklahoma statutes

Title 21 Oklahoma Statute § 701.10 states:

> Upon conviction or adjudication of guilt of a
> defendant of murder in the first degree, wherein the state is
> seeking the death penalty, the court shall conduct a separate
> sentencing proceeding to determine whether the defendant
> should be sentenced to death . . . .  The proceeding shall be
> conducted by the trial judge before the *same trial jury* . . . .

Okla. Stat. tit. 21, § 701.10 (emphasis added).  Section 701.10a further provides:

> Notwithstanding [the above], which requires that *the
> same jury sit in the sentencing phase of a capital murder
> trial,* the following shall apply:
>
> Upon any appeal by the defendant where the sentence is of
> death, the appellate court, if it finds prejudicial error *in the
> sentencing proceeding only,* may set aside the sentence of
> death and remand the case to the trial court . . . .  No error
> in the sentencing proceeding shall result in the reversal of
> the conviction for a capital felony.  When a capital case is
> remanded after vacation of a death sentence, the prosecutor
> may[] . . . move the trial court to impanel a *new sentencing
> jury* who shall determine the sentence of the defendant[]
> . . . [and] the trial court shall impanel a new jury for the
> purpose of conducting new sentencing proceedings[.]

Okla. Stat. tit. 21, § 701.10a (emphasis added).

23

## ii. *Hicks v. Oklahoma*

In *Hicks v. Oklahoma*, an Oklahoma jury convicted Mr. Hicks of distributing heroin. 447 U.S. at 344-45. After receiving an instruction to apply Oklahoma's then-existing habitual offender statute, the jury sentenced Mr. Hicks to 40 years in prison, the statute's mandatory sentence. *Id.* at 345-46. Shortly after, the OCCA held in *Thigpen v. State*, 571 P.2d 467, 471 (Okla. Crim. App. 1977), that the habitual offender statute was unconstitutional. *See Hicks*, 447 U.S. at 345. Without the unconstitutional habitual offender statute, a 10-year minimum—rather than a 40-year minimum—would have applied to Mr. Hicks's sentencing. *See id.* at 346. Mr. Hicks thus appealed, seeking to have his sentence vacated. *Id.* at 345. The OCCA "acknowledged that the [habitual offender] provision was unconstitutional, but nonetheless affirmed the . . . conviction and sentence, reasoning that [Mr. Hicks] was not prejudiced by the impact of the invalid statute, since his sentence was within the range of punishment that could have been imposed in any event." *Id.*

The United States Supreme Court reversed. It noted that Mr. Hicks had a "statutory right [under Oklahoma law] to have a jury fix his punishment in the first instance" and that this right "substantially affects the punishment imposed." *Id.* at 347. It also noted that without the unconstitutional 40-year minimum, "[t]he possibility that the jury would have returned a sentence of less than 40 years [was] . . . substantial." *Id.* at 346. The Court rejected the OCCA's conclusion that Mr. Hicks had not been prejudiced by the application of the invalid habitual offender statute and stated, "It is . . .

24

wholly incorrect to say that the petitioner could not have been prejudiced by the instruction requiring the jury to impose a 40-year prison sentence." *Id.* The Court therefore held that "the State deprived [Mr. Hicks] of his liberty without due process of law," *id.* at 347, and reversed and remanded for resentencing.

### iii. Additional AEDPA background

AEDPA permits reversal of a state court's judgment only if the court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(1)-(2). "It is the petitioner's burden to make this showing and it is a burden intentionally designed to be 'difficult to meet.'" *Owens v. Trammell*, 792 F.3d 1234, 1242 (10th Cir. 2015) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)).

"[T]he threshold question" in an AEDPA analysis is "[w]hether the law is clearly established." *House*, 527 F.3d at 1015 (emphasis omitted); *see also Yarborough v. Alvarado*, 541 U.S. 652, 660 (2004) ("We begin by determining the relevant clearly established law."). "The absence of clearly established federal law is dispositive under § 2254(d)(1)," *House*, 527 F.3d at 1018, and "without clearly established federal law, a federal habeas court need not assess whether a state court's decision was contrary to or involved an unreasonable application of such law," *id.* at 1017 (quotations omitted).

"[C]learly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*." *Id.* at 1016. Such

25

holdings "must be construed narrowly and consist only of something akin to on-point holdings." *Id.* at 1015.[11]

b. *Analysis*

Because it is not clear whether § 701.10 and § 701.10a apply to proceedings like Mr. Mitchell's, we do not decide whether Mr. Mitchell suffered a state-law violation.[12] Instead, we assume he did and proceed to our AEDPA analysis. Below, we (i) explain why AEDPA review applies and (ii) analyze the merits of the claim under the AEDPA standard. We affirm the district court's denial of habeas relief because (1) Mr. Mitchell has not advanced any argument as to why the OCCA's sentencing decision was contrary to or an unreasonable application of clearly established Supreme Court law, and (2) *Hicks* does not supply the clearly established law necessary for Mr. Mitchell to overcome AEDPA deference.

---

[11] Although "clearly established federal law" must be factually comparable to the case at issue, "factual identity between existing Supreme Court cases and the case *sub judice*" is neither necessary nor sufficient. *House*, 527 F.3d at 1016 n.5. As this court explained in *House*, "[I]t is not enough for courts to mechanistically seek to determine whether there are Supreme Court holdings that involve facts that are indistinguishable from the case at issue." *Id.* Instead, courts "must exercise a refined judgment and determine the actual materiality of the lines (or points) of distinction between existing Supreme Court cases and the particular case at issue . . . ." *Id.*

[12] We are not convinced that Mr. Mitchell's resentencing violated the same-jury requirement set forth in § 701.10 and § 701.10a. These provisions state a same-jury rule for the guilt and sentencing stages of a capital trial, but they do not address what must happen if a federal habeas court vacates a death sentence. Mr. Mitchell acknowledges this uncertainty. At oral argument, his counsel recommended certifying the *Hicks* question to the Oklahoma courts, *see* Oral Arg. at 22:17-34, and stated, "I'm forced to concede . . . that there's some ambiguity in the Oklahoma law," *id.* at 22:54-23:00.

i.  AEDPA standard applies

The AEDPA standard governs Mr. Mitchell's *Hicks* claim because the OCCA

addressed the issue on the merits.  *See Stouffer v. Duckworth*, 825 F.3d 1167, 1179 (10th

Cir. 2016) ("[I]f the state court did not decide the claim on the merits, the stringent

principles of deference under . . . § 2254 are inapplicable." (quotations omitted)).  Mr.

Mitchell argues "there was no adjudication on the merits by the state court" and that we

should therefore review his claim de novo.  Renewed Request for COA, Doc. 10507440

at 31.  But where, as here, "a federal claim has been presented to a state court and the

state court has denied relief, it may be presumed that the state court adjudicated the claim

on the merits in the absence of any indication or state-law procedural principles to the

contrary."  *Johnson v. Williams*, 568 U.S. 289, 298 (2013) (quoting *Harrington v.*

*Richter*, 562 U.S. 86, 99 (2011)).  Mr. Mitchell has not overcome this presumption

because he has not identified any "state-law procedural principles" or other "indication"

showing the state court did not resolve his claim.  *Id.*  He also has waived any argument

that AEDPA review does not apply because he did not argue in district court that the

OCCA did not decide his *Hicks* claim on the merits.  *See* Brian R. Means, Fed. Habeas

Manual § 3:7 (2019) ("[A] prisoner may waive the argument that a state court decision

does not constitute a merits adjudication for purposes of AEDPA . . . if not raised in the district court . . . .").[13]  We therefore review the claim under § 2254(d)(1).[14]

### ii. AEDPA analysis

#### 1) Failure to argue AEDPA

Mr. Mitchell advances no arguments as to whether or how his *Hicks* claim should prevail under the AEDPA framework.  At oral argument, his counsel effectively conceded the *Hicks* claim cannot withstand AEDPA review.  *See* Oral Arg. at 23:00-04 (Mr. Mitchell's counsel accepting the panel's suggestion that the *Hicks* claim "could not prevail under AEDPA deference").  Mr. Mitchell has therefore failed to demonstrate that the OCCA's decision was contrary to or an unreasonable application of clearly established federal law.  *See Owens*, 792 F.3d at 1242 ("It is the petitioner's burden to make this showing . . . .").  We could reject the *Hicks* claim on the sole basis that Mr. Mitchell has not advanced any arguments relating to the AEDPA standard.

---

[13] Mr. Mitchell's counsel confirmed this at oral argument.  When the panel asked, "You don't disagree with me that there were no arguments in district court that the standard of review is not AEDPA deference?," Oral Arg. at 21:12-23, counsel responded, "Correct.  There was not an explicit argument . . . .  I accept that," *id.* at 21:23-31; *see also id.* at 16:10-21:35 (discussing whether AEDPA review applies to Mr. Mitchell's *Hicks* claim).

[14] As explained above in footnote 8, the state waived any defense based on the OCCA's res judicata ground for denying relief by failing to argue procedural default either in district court or on appeal.  *See Hooks*, 184 F.3d at 1216.

2)  No clearly established law

Even if we proceed to the merits, the *Hicks* claim fails because Mr. Mitchell

cannot show that *Hicks* supplies clearly established Supreme Court law.  *See House*, 527

F.3d at 1018 ("The absence of clearly established federal law is dispositive . . . .").  *Hicks*

is not "closely-related or similar to the case *sub judice*."  *Id.* at 1016.  In *Hicks*, an

Oklahoma trial court instructed the jury to sentence the defendant under Oklahoma's

habitual offender statute, which was later held unconstitutional.  *See* 447 U.S. at 344-45.

The Supreme Court found this prejudiced the defendant and violated his due process

rights.  *Id.* at 346.  *Hicks* thus decided that when a state law provides for a jury to impose

a sentence, a defendant has a due process right for the jury to be instructed under a

constitutional standard.  Mr. Mitchell, by contrast, alleges a due process right to have the

same jury decide both guilt and punishment in a capital case.  He does not contend his

resentencing jury was instructed to apply an unconstitutional sentencing statute.

*Hicks* thus does not provide "something akin to [an] on-point holding[]."  *House*,

527 F.3d at 1015.  Although the claims in *Hicks* and this case both involved due process

challenges to jury sentencing proceedings, they are materially different.  *Hicks* addressed

the defendant's right to be sentenced by a properly instructed jury.  Mr. Mitchell alleges a

right to be convicted and sentenced by the same jury.  Applying *Hicks* to this case would

"require us inappropriately to extend [*Hicks*] to a novel context."  *Littlejohn v. Trammell*,

704 F.3d 817, 850 (10th Cir. 2013).  *Hicks* therefore cannot serve as clearly established

federal law to resolve Mr. Mitchell's claim.  *See id.* at 849-50 (determining Fifth

29

Amendment's prohibition on unlawful extraction of confessions did not provide clearly established law for defendant's claim that his voluntary confessions violated his due process rights).

Mr. Mitchell argues that "*Hicks* unquestionably gave [Mr.] Mitchell a constitutional right to the 'same jury' following . . . a remand from a federal court." Pet'r. Third Supp. Br., Doc. 10593597 at 7-8. But *Hicks* stands for the general due process principle that "[w]here . . . a State has provided for the imposition of criminal punishment in the discretion of the trial jury, . . . [t]he defendant . . . has a substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion." 447 U.S. at 346. General principles, however, do not provide clearly established law under AEDPA. As the Supreme Court said in *Nevada v. Jackson*, 569 U.S. 505 (2013), "framing [Supreme Court] precedents at . . . a high level of generality" would "defeat the substantial deference that AEDPA requires" by allowing "a lower federal court [to] transform even the most imaginative extension of existing case law into clearly established Federal law, as determined by the Supreme Court." *Id.* at 512 (quotations omitted). And in *House*, we said "federal courts may [not] extract clearly established law from the general legal principles developed in factually distinct contexts." 527 F.3d at 1016 n.5.

"Because there is no clearly established federal law" to resolve Mr. Mitchell's *Hicks* claim, "[his] challenge fails at the threshold inquiry," and "[u]nder § 2254(d)(1) our analysis ends." *Id.* at 1022; *see also id.* at 1021 ("Absent controlling Supreme Court

30

precedent, it follows ineluctably that the [state court's] decision . . . cannot be either contrary to, or an unreasonable application of, clearly established Federal law." (alterations and quotations omitted)).  We therefore affirm the district court's denial of relief as to Mr. Mitchell's *Hicks* claim.

## III.  CONCLUSION

For the foregoing reasons, we affirm the decision of the district court.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge